No. 2--05--0883      Filed: 4-20-07

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03--CF--2565 |
| SANDRA ROGERS, | ) ) | Honorable John T. Phillips, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE GROMETER delivered the opinion of the court:

Defendant, Sandra Rogers, appeals from an order of the circuit court of Lake County summarily dismissing her petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122--1 et seq. (West 2004)) from her convictions of two counts of attempted murder (720 ILCS 5/8--4, 9--1 (West 2002)). We reverse and remand.

On November 24, 2004, defendant entered a negotiated guilty plea pursuant to North Carolina v. Alford, 400 U.S. 25, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970). That same day, in accordance with her agreement with the State, defendant was sentenced to consecutive prison terms of 18 and 12 years. As the factual basis for the plea, it was stipulated that if the case proceeded to trial, evidence would be introduced showing that defendant's former husband, Richard Rogers, and his wife were attacked in their home with a hammer and suffered life-threatening head and facial injuries. Seventeen-year-old Jonathan M. admitted to police that he was involved in the attack. He

had been in a sexual relationship with defendant's and Richard's youngest daughter, who was 14 years old. At first he claimed that he acted alone, but he later told police that he perpetrated the attack with defendant.

Jonathan M. had lived for several months with defendant and her daughter. As a result of the sexual relationship between Jonathan M. and defendant's daughter, defendant lost custody of the girl to Richard. Shortly before the attack, defendant had been caught in violation of a court order that apparently prohibited her from allowing her daughter to have contact with Jonathan M. Consequently, defendant faced the possibility of incarceration for contempt of court and the possibility that the court would order that her visitation with her daughters be supervised.

Jonathan M. would testify that he continued to spend a great deal of time with defendant in her home after her daughter went to live with Richard. Jonathan M. had a sexual encounter with defendant. Hours before the attack, defendant had told him that she wanted to kill Richard. Defendant admitted to police that she had a sexual encounter with Jonathan M. and that she had told him, in essence, that Richard needed to die. She stated, however, that it was not her intent that Jonathan M. act on the statement, and she did not believe that he would do so. She denied having gone to the victims' home with Jonathan M., stating that she was home in bed at the time of the attack.

The trial court accepted defendant's plea and imposed sentence in accordance with defendant's agreement with the State. Defendant did not move to withdraw her plea and did not file a notice of appeal. However, on March 21, 2005, she filed a pro se petition under the Act, alleging that shortly before she entered her plea, her attorney told her that he had been advised by the prosecutor about a sworn statement prepared by Jonathan M. The statement purportedly indicated

that a Lake County corrections officer named Sims had delivered a message to Jonathan M. from defendant saying that defendant "was sorry." According to defendant's attorney, Officer Sims was supposed to testify about this message. In her postconviction petition, defendant alleged, "The only message I ever gave Officer Sims for Jonathan [M.] was 'How are you and I love you.' "

Defendant further alleged that prior to this conversation with her attorney, she had believed that Jonathan M.'s "lies" would be "evident to everyone" and she was ready to go to trial. She felt that Officer Sims must have somehow misunderstood her message to Jonathan M. However, defendant believed that "with Jonathan [M.]'s lies and Officer Sims['s] mistaken testimony, it would be the final nail in [her] coffin."

After entering her plea, however, defendant had a chance to speak with Officer Sims. Officer Sims assured defendant that Jonathan M. and the prosecutor had lied about her statement. Defendant alleged that her attorney had never investigated Jonathan M.'s and Officer Sims's purported statements; he merely took the prosecutor at his word about those statements. Defendant alleged that after speaking with Officer Sims, she "ha[d] written to [her attorney] begging for his help and detailing all the new evidence and lies and asking him to please talk to Officer Sims." Defendant received no response. The petition is verified by defendant's affidavit. However, defendant did not attach any other affidavits, records, or evidence to the petition.

The trial court summarily dismissed the petition on June 20, 2005. Defendant filed a notice of appeal on August 18, 2005, and the record on appeal was certified on December 2, 2005. On December 28, 2005, defendant filed a motion in this court for leave to file a late notice of appeal. This court allowed the motion on January 6, 2006, and ordered the clerk of this court to transmit the notice of appeal to the clerk of the circuit court for filing.

At the outset, we note that the State questions our jurisdiction to hear this appeal. The State observes that, although the appendix to defendant's brief includes a copy of the late notice of appeal file-stamped by the clerk of the circuit court, the notice of appeal does not actually appear in the record on appeal. Its absence is not surprising given that the record on appeal was certified before defendant moved to file a late notice of appeal. Under these circumstances, and given that we ordered the clerk of this court to transmit the late notice of appeal to the clerk of the circuit court for filing, we are satisfied that the file-stamped copy is sufficient evidence that the late notice of appeal was properly filed so as to invoke our jurisdiction. Accordingly, we turn to the merits of the appeal.

The Act "establishes a procedure for determining whether a criminal defendant was convicted in substantial violation of his or her constitutional rights." People v. Collins, 202 Ill. 2d 59, 65 (2002). Section 122--1(b) of the Act provides that a petition for relief under the Act shall be verified by affidavit. 725 ILCS 5/122--1(b) (West 2004). Section 122--2 of the Act provides that "[t]he petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122--2 (West 2004).

In cases where the defendant has been sentenced to imprisonment rather than to death, proceedings under the Act are divided into three stages. People v. Gaultney, 174 Ill. 2d 410, 418 (1996). The first stage is governed by section 122--2.1(a) of the Act (725 ILCS 5/122--2.1(a) (West 2004)), under which the trial court is required to independently examine the petition within 90 days after it is filed and docketed. The trial court shall summarily dismiss the petition if it finds that it "is frivolous or is patently without merit." 725 ILCS 5/122--2.1(a)(2) (West 2004). "A post-conviction petition is considered frivolous or patently without merit only if the allegations in the petition, taken as true and liberally construed, fail to present the 'gist of a constitutional claim.'

" People v. Edwards, 197 Ill. 2d 239, 244 (2001), quoting Gaultney, 174 Ill. 2d at 418. However, as will be discussed at greater length below, the failure to substantiate the petition with affidavits, records, or other evidence is also grounds for summary dismissal. Collins, 202 Ill. 2d at 66.

Defendant argues that her petition sets forth the gist of a constitutional claim under three theories (which we consider in a different order than presented in her brief). First, defendant contends that her petition sets forth the gist of a claim of ineffective assistance of counsel in connection with the entry of her guilty plea. Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), established a two-prong test for evaluating claims of ineffective assistance of counsel. Under Strickland, the defendant must show that counsel's performance "fell below an objective standard of reasonableness" and that the deficient performance was prejudicial in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 688, 694, 80 L. Ed. 2d at 693, 698, 104 S. Ct. at 2064, 2068. "In order to satisfy the 'prejudice' requirement in a plea proceeding, the defendant must show that there is a reasonable probability that, but for counsel's errors, the defendant would not have pleaded guilty and would have insisted on going to trial." People v. Pugh, 157 Ill. 2d 1, 15 (1993).

Defendant argues that she decided to plead guilty after her attorney told her that the State claimed to have evidence that Officer Sims conveyed an apology from defendant to Jonathan M. Defendant argues that her attorney should have interviewed Officer Sims and that, if he had done so, he would have learned that she delivered no such apology. Defendant contends that had she known that Officer Sims would refute the State's claim, she would have insisted on going to trial. In a second, related theory, defendant posits that her constitutional right to due process of law was

violated because the prosecutor induced her plea with material misrepresentations regarding the State's evidence.

Even if the petition's allegations present the gist of a constitutional claim of either ineffective assistance of counsel or a due process violation, defendant faces an additional hurdle because she did not attach to her petition any affidavits, records, or other evidence to support her allegations (or explain the failure to do so) as required by section 122--2 of the Act. As noted, in Collins, our supreme court held that the failure to comply with section 122--2 can be grounds for the summary dismissal of a pro se postconviction petition, irrespective of whether the bare allegations of the petition state the gist of a constitutional claim.

The Collins court also held that mere verification of the petition, pursuant to section 122--1(b), is not a substitute for affidavits, records, or other evidence. The court reasoned that the verification required by section 122--1(b) "serves a purpose wholly distinct from the 'affidavits, records, or other evidence' described in section 122--2." Collins, 202 Ill. 2d at 67. The Collins court explained:

"The former, like all pleading verifications, confirms that the allegations are brought truthfully and in good faith. [Citation.] The latter, by contrast, shows that the verified allegations are capable of objective or independent corroboration. To equate the two is not only to confuse the purposes of subjective verification and independent corroboration but also to render the 'affidavits, records, or other evidence' requirement of section 122--2 meaningless surplusage." Collins, 202 Ill. 2d at 67.[1]

_____

[1]We acknowledge that in People v. Rivera, 342 Ill. App. 3d 547, 550-51 (2003), we equated the two by determining that the defendant's sworn verification satisfied section 122--2. That

Defendant suggests that Collins may no longer be good law in light of our supreme court's subsequent decision in People v. Boclair, 202 Ill. 2d 89 (2002). It is true that two members of our supreme court have viewed Boclair as holding that the sole inquiry at the first stage of a postconviction proceeding is whether the petition states the gist of a constitutional claim, not whether it otherwise complies with the procedural requirements of the Act. Collins, 202 Ill. 2d at 80 (McMorrow, J., dissenting upon denial of rehearing, joined by Freeman, J.). Nonetheless, our supreme court has continued to cite Collins for the proposition that "[t]he failure to comply with section 122--2 is fatal and by itself justifies the petition's summary dismissal." People v. Harris, 224 Ill. 2d 115, 126 (2007). Accordingly, we will adhere to Collins.

Defendant alternatively argues that her petition sufficiently complies with section 122--2, despite her failure to attach any affidavits, records, or other evidence. By its terms, section 122--2 excuses a defendant from attaching such evidentiary materials if the petition "state[s] why the same are not attached." 725 ILCS 5/122--2 (West 2004). Collins recognizes that it is not always necessary that the petition explicitly state why evidentiary materials are not attached. Citing People v. Williams, 47 Ill. 2d 1 (1970), the Collins court acknowledged that where a claim is based on communications between the defendant and his or her attorney, the failure to attach the required documentation, or to explicitly state why it is not attached, is not fatal if the petition contains facts from which the court can easily infer that " 'the only affidavit that petitioner could possibly have furnished, other than his own sworn statement, would have been that of his attorney.' " Collins, 202 Ill. 2d at 68, quoting Williams, 47 Ill. 2d at 4. In Williams, the defendant's claim was based on a statement whispered to him by his attorney. In People v. Hall, 217 Ill. 2d 324, 333 (2005), our

_____

determination was foreclosed by Collins.

supreme court held that the failure to attach an affidavit in support of his postconviction claim that his guilty plea was the result of material misinformation from his attorney was not fatal where the petition's description of the defendant's meetings with his attorney did not mention that anybody else was present, and it thus could be inferred that the misinformation was conveyed during the course of confidential communications between the defendant and his attorney.

In this case, as in <u>Williams</u> and <u>Hall</u>, it can be inferred that the only proof defendant could supply (other than her own sworn statement) concerning what her attorney told her before she entered her plea would be an affidavit from her attorney. But defendant's claim does not depend solely on communications between her and her attorney. In addition, a central allegation is that Officer Sims would have refuted the State's claim that defendant asked her to deliver an apology to Jonathan M. Officer Sims presumably could have supplied an affidavit stating whether defendant had asked her to deliver the apology and whether defendant's attorney had ever spoken with her about the alleged apology. That defendant might be unable to substantiate some of the allegations of her petition should not excuse her from attaching affidavits, records, or other evidence supporting other principal allegations of the petition. Defendant argues that the allegations in her petition that she asked her attorney to contact Officer Sims on her behalf, and that he failed to do so, explain the absence of an affidavit from Officer Sims. The argument is unpersuasive. Nothing in the petition explains why, after becoming aware that her attorney had <u>not</u> contacted Officer Sims, defendant still failed to contact Officer Sims herself.

Given the absence of an affidavit from Officer Sims (or an explanation why one could not be obtained), defendant's petition could not survive summary dismissal on the basis that it stated a claim of ineffective assistance of counsel or deprivation of due process in connection with the entry

of her guilty plea. We reach a different conclusion, however, with respect to defendant's remaining theory--that her petition states the gist of a constitutional claim of ineffective assistance of counsel based on her attorney's failure to move to withdraw her guilty plea. We first note that, although the petition is not couched specifically in terms of the failure to file a motion to withdraw, the facts alleged in the petition support such a claim. Defendant alleged that after entering her plea--and then learning that her plea was induced by misrepresentations from the State--she "ha[d] written to [her attorney] begging for his help and detailing all the new evidence and lies and asking him to please talk to Officer Sims," but her attorney did not respond.

The State emphasizes the lack of any allegation that defendant specifically asked her attorney to move to withdraw her guilty plea. However, a claim of ineffective assistance of counsel based on the failure to move to withdraw a guilty plea need not be based on an express request from the defendant. Here, defendant's allegations establish, at the very least, that defendant's attorney had reason to know that she would be interested in securing relief from her conviction. Pursuant to Roe v. Flores-Ortega, 528 U.S. 470, 480, 145 L. Ed. 2d 985, 997, 120 S. Ct. 1029, 1036 (2000), defendant's attorney was thus under a duty to at least consult with defendant about pursuing an appeal. Moreover, because defendant's conviction arose from a negotiated guilty plea, the duty to consult about an appeal necessarily entailed a duty to consult about moving to withdraw her guilty plea. This is so because a defendant who has entered a negotiated guilty plea must move to withdraw that plea before taking an appeal. See 210 Ill. 2d R. 604(d). According to defendant's petition, her attorney did not respond to her correspondence. Therefore, he did not fulfill his duty of consultation.

Counsel's alleged failure to properly consult with defendant satisfies the first prong of the Strickland test. However, defendant must also establish prejudice by "demonstrat[ing] that there is

-9-

a reasonable probability that, but for counsel's deficient failure to consult with [her] about an appeal, [she] would have timely appealed." Flores-Ortega, 528 U.S. at 484, 145 L. Ed. 2d at 999, 120 S. Ct. at 1038. Defendant's petition satisfies the requirement. Prejudice may be demonstrated by showing a meritorious basis for the appeal or by showing "other substantial reasons to believe [the defendant] would have appealed." Flores-Ortega, 528 U.S. at 486, 145 L. Ed. 2d at 1001, 120 S. Ct. at 1040. Here, the postconviction petition establishes that defendant essentially felt that she had been tricked into entering her plea and that she was adamant about seeking relief from her plea. Given her adamance, there is at least a reasonable probability that if her attorney had consulted with her, she would have pursued a motion to withdraw and, if necessary, an appeal.

Defendant's failure to obtain an affidavit from Officer Sims is not fatal to this claim. Such an affidavit would have been germane to the merits of a motion to withdraw. However, at the first stage of a postconviction proceeding, a pro se defendant claiming ineffective assistance of counsel based on the failure to file a motion to withdraw is not required to show that such a motion would have been successful. Edwards, 197 Ill. 2d at 257.

The State argues that, because defendant's claim depends on correspondence with her attorney, she should have attached the correspondence to the petition. In support of this argument, the State relies on People v. Anderson, 287 Ill. App. 3d 1023 (1997). In Anderson, the defendant alleged that he had written to his attorney informing him that he wanted to withdraw his guilty plea. The Anderson court noted that this allegation was in conflict with another allegation in the petition and that the allegations "lack[ed] any supporting documents, such as the alleged letter written by defendant." Anderson, 287 Ill. App. 3d at 1032. In affirming the summary dismissal of the petition, the Anderson court relied, in part, on the lack of supporting documents. Anderson, 287 Ill. App. 3d

at 1033. The Anderson court appears to have overlooked the principle established in Williams, recognized in Collins, and subsequently applied in Hall, that the absence of an affidavit is not fatal when it can easily be inferred that " 'the only affidavit that petitioner could possibly have furnished, other than his own sworn statement, would have been that of his attorney.' " Collins, 202 Ill. 2d at 68, quoting Williams, 47 Ill. 2d at 4; see also Hall, 217 Ill. 2d at 333. Here, it can easily be inferred that defendant could not attach her correspondence to the petition because any correspondence would have been in the possession of her attorney and thus not readily available to defendant. To the extent Anderson holds to the contrary, we decline to follow it.

The State also contends that defendant's petition is insufficient because it does not allege that she contacted her attorney within the 30-day period for filing a motion to withdraw her guilty plea. The argument reflects an unduly stringent view of the pleading requirements applicable at the first stage of a postconviction proceeding. As noted, at the first stage, a postconviction petition need present only the gist of a constitutional claim. In Edwards, our supreme court stated:

"The 'gist' standard is 'a low threshold.' [Citation.] To set forth the 'gist' of a constitutional claim, the post-conviction petition 'need only present a limited amount of detail' [citation] and hence need not set forth the claim in its entirety." Edwards, 197 Ill. 2d at 244.

The Edwards court expressly rejected the holding of People v. Lemons, 242 Ill. App. 3d 941 (1993), that a pro se defendant must "plead sufficient facts from which the trial court could find a valid claim of deprivation of a constitutional right." (Emphasis in original.) Lemons, 242 Ill. App. 3d at 946. The Edwards court reasoned as follows:

"[R]equiring this type of full or complete pleading is contrary to this court's holding that the pro se defendant 'need only present a limited amount of detail' [citation] to survive

summary dismissal at the first stage of the post-conviction proceedings. It is also at odds with the 'gist' standard itself since, by definition, a 'gist' of a claim is something less than a completely pled or fully stated claim.

Further, the 'sufficient facts' test imposes too heavy a burden on the pro se defendant. While in a given case the pro se defendant may be aware of all the facts pertaining to his claim, he will, in all likelihood, be unaware of the precise legal basis for his claim or all the legal elements of that claim. In many cases, the pro se defendant will be unaware that certain facts, which in his mind are tangential or secondary, are, in fact, critical parts of a complete and valid constitutional claim. Under the 'sufficient facts' test, however, the pro se defendant must recognize the facts that need to be pled to support a 'valid claim.' This is an unrealistic requirement. Accordingly, we decline to adopt the 'sufficient facts' test." Edwards, 197 Ill. 2d at 245.

We believe that to uphold the summary dismissal of defendant's petition merely because it fails to identify the time frame during which she communicated with her attorney would run afoul of these principles and represent a return to the "sufficient facts" standard repudiated in Edwards.

We therefore hold that defendant's petition states the gist of a claim of ineffective assistance of counsel based on counsel's failure to move to withdraw defendant's guilty plea. We further hold that this claim is not subject to summary dismissal for failure to comply with section 122--2. Accordingly, the dismissal of defendant's petition must be reversed. We hasten to add, however, that although we have found that defendant's other claims (i.e., those arising from the entry of her plea as opposed to counsel's failure to move to withdraw the plea) were not properly substantiated under section 122--2, they must be reinstated on remand. This is so because section 122--2.1(a) does not

permit the summary dismissal of individual claims. <u>People v. Rivera</u>, 198 Ill. 2d 364, 370-74 (2001). As we read <u>Rivera</u>, if any claim survives summary dismissal, the entire petition does.

For the foregoing reasons, the judgment of the circuit court of Lake County summarily dismissing defendant's postconviction petition is reversed and the case is remanded for further proceedings under the Act.

Reversed and remanded.

HUTCHINSON and O'MALLEY, JJ., concur.