2020 IL App (1st) 173120-U

FOURTH DIVISION
September 30, 2020

No. 1-17-3120

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

|  |  |  |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County |
|  | ) |  |
| Plaintiff-Appellee, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) | Nos. 12 CR 1729901 |
| ANDREW THOMAS, | ) | 13 CR 227901 |
|  | ) |  |
| Defendant-Appellant. | ) |  |
|  | ) | Honorable |
|  | ) | Thaddeus L. Wilson, |
|  | ) | Judge Presiding. |

_____

JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Reversing the summary dismissal of defendant's postconviction petition where he stated a gist of a constitutional violation in regard to whether the trial court properly admonished him during his guilty plea hearing under Illinois Supreme Court Rule 402 (eff. July 1, 2012).

¶ 2    Defendant Andrew Thomas appeals from the circuit court of Cook County's dismissal of his *pro se* postconviction petition at the first stage of proceedings under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)).  On appeal, defendant maintains that

his petition should not have been dismissed where he presented an arguable claim of a violation of his due process rights because he was not adequately admonished by the trial court as required by Illinois Supreme Court Rule 402 (eff. July 1, 2012). Specifically, defendant argues that he was not informed of the nature of the charges against him prior to pleading guilty to aggravated criminal sexual assault and attempted first degree murder and was also not apprised of his right to confront witnesses. Accordingly, defendant maintains his guilty plea was not knowingly and intelligently entered. For the reasons which follow, we reverse the judgment of the circuit court and remand the matter for second-stage proceedings.

¶ 3                                                 BACKGROUND

¶ 4      In September 2012, defendant was charged by information in case number 12 CR 1729901 with 23 counts related to the assault of his former girlfriend, A.D., inside her home while their three-month-old child was present. These charges included home invasion, aggravated criminal sexual assault, attempted first degree murder, residential burglary, kidnapping, aggravated domestic battery, aggravated battery, aggravated unlawful restraint, and criminal trespass to residence.

¶ 5      Two months later, in November 2012, defendant solicited a fellow inmate and an undercover Cook County sheriff to murder A.D. and her three children who were not biologically related to defendant. Based on this, defendant was indicted in January 2013 under case number 13 CR 227901 for 12 counts of solicitation of murder. The matter proceeded before the same trial court judge as related matters.

¶ 6      On September 15, 2014, defense counsel informed the trial court that, pursuant to plea negotiations with the State, defendant wished to plead guilty to the offenses of aggravated criminal sexual assault, attempted first degree murder, and two counts of solicitation of murder

in exchange for an aggregate 28-year sentence. The State nol-prossed the remaining charges.

¶ 7     The trial court then admonished defendant as follows:

"THE COURT: Sir, in case number 12 CR 1729901 in count three, you're charged with aggravated criminal sexual assault. It is charged as a class X felony. This means that if you were found guilty or were to plead guilty, you could be sentenced from six to 30 years in the Illinois Department of Corrections, fined up to $25,000 and be required to serve a period of mandatory supervised release formerly known as parole of three years to life after your period of incarceration.

In count nine you are charged with attempt first degree murder. It is charged as a class X felony, six to 30. That means if you were found guilty or were to plead guilty, you could be sentenced from six to 30 years in the Illinois Department of Corrections, fined up to $25,000 and be required to serve a period of mandatory supervised release formerly known as parole of three years after your period of incarceration.

In case number 13 CR 0227901, in count five you are charged with solicitation of murder. It is charged as a class X felony. In count nine again you're charged with solicitation of murder. It is charged as a class X felony. That means with respect to those counts if you were found guilty or were to plead guilty, you could be sentenced from six to 30 years.

[ASSISTANT STATE'S ATTORNEY]: It's a special class X. It's 15 to 30 years.

THE COURT: You could be sentenced from 15 to 30 years in the Illinois Department of Corrections, fined up to $25,000 and be required to serve a period of mandatory supervised release formerly known as parole of three years after your period

of incarceration. Do you understand each of the four charges against you and the possible penalties?

DEFENDANT: Yes, your Honor.

THE COURT: With respect to each of those charges how do you plead, guilty or not guilty?

DEFENDANT: Guilty."

¶ 8    The court then admonished defendant of the rights he would be relinquishing by pleading guilty:

"THE COURT: Do you understand you have a right to plead not guilty and have a trial before a jury or a judge?

DEFENDANT: Yes, your Honor.

THE COURT: Do you know when [*sic*] a jury trial is?

DEFENDANT: Yes, your Honor.

THE COURT: I have in my hand two jury waiver forms, is that your signature at the bottom of each?

DEFENDANT: Yes.

THE COURT: Did you read them or were they explained to you before you signed them?

DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that by signing those forms you waive your right to a trial before a jury?

DEFENDANT: Yes.

THE COURT: Do you understand you're also waiving your right to a trial of any

kind including before a judge?

    DEFENDANT:  Yes, your Honor.

    THE COURT:  Has anyone threatened you or promised you anything to get you to plead guilty?

    DEFENDANT:  No.

    THE COURT:  Are you pleading guilty of your own free will?

    DEFENDANT:  Yes."

The trial court then advised defendant of the impact of pleading guilty to these charges if he was not a United States citizen and defendant stated that he understood.  The court also advised defendant that it was not bound by any agreement among defendant, his counsel, and the prosecution, and defendant stated he understood.  The trial court accepted defendant's jury waiver as "knowingly and voluntarily given."

¶ 9    The State then presented the factual basis of the plea as follows.  On August 30, 2012, the defendant and A.D. had a child in common who, at the time, was three months old.  On that date, A.D. went to her residence with the baby.  When she entered the residence, she observed defendant inside her home.  Defendant instructed her to put the child down and then grabbed A.D. by the hair and pushed her to the floor.  He then grabbed her neck with both hands and strangled her, squeezing her neck while he forced her face into the couch cushions.  Defendant told A.D. he wanted to kill her and that if she was not going to be with him, she was not going to be with anyone else.  Then defendant pushed her to the floor, kicked her in the legs, and told her he was going to treat her like a dog.  Defendant struck A.D. in the back and the back of the legs with a pan he had retrieved from the kitchen.  Defendant told A.D. to go into the bedroom and stated he wanted to have sex with her to get her pregnant again.  Defendant ordered A.D. to take

off her clothes, which she did. Defendant then vaginally raped A.D.

¶ 10    After the assault, A.D. informed defendant she had to pick up her other children from day care. Defendant stated A.D. could not take the baby with her and that if she called the police, he would harm the baby. Defendant said he was going to kill A.D. because he knew that she was going to call the police.

¶ 11    A.D. was able to leave the apartment without her baby and contacted the police who went to the residence. The police officers observed defendant trying to exit through a window while carrying the baby in his arms. The officers announced their office and defendant retreated back into the apartment where he was ultimately arrested. In addition, the State indicated that A.D. would identify defendant in open court during trial. Defense counsel stipulated that this would be the testimony if the matter were to proceed to trial.

¶ 12    The State then presented the factual basis for the plea in 13 CR 227901, which was stipulated to by defense counsel as follows. On November 5, 2012, an individual named Alexander Peebles was in custody when he met defendant. Peebles and defendant began speaking and Peebles learned that defendant had been talking to another individual about his case and the possibility of having A.D. killed. Peebles told defendant that he could have his cousin do it for cheaper than the first individual. Peebles and defendant agreed to have the cousin visit defendant. Peebles also obtained a note where defendant wrote A.D.'s name and address as well as a map of A.D.'s home.

¶ 13    Peebles contacted the Cook County Sheriff's Department. An undercover officer by the name of Andrew Gutter posed as Peebles' cousin and hitman. Defendant was provided with Gutter's phone number and on November 8, 2012, defendant called Gutter and asked him to visit. Gutter would testify that on November 11, 2012, he visited defendant and recorded their

conversation under court order. Gutter asked defendant what was going on and defendant indicated he had "some baby mama drama" and went on to discuss how A.D. was not going to discuss dropping the charges. Gutter told defendant "that he doesn't talk to people, he doesn't scare people. He doesn't – all he does is kill people and that's the bottom line." Defendant agreed and the two made "a deal." Thereafter, defendant provide Gutter with A.D.'s name and address, as well as a description of her children and her schedule. When discussing what would happen if the children were at home when Gutter arrived, defendant stated he "wouldn't care whether or not those people had to be taken care of so long as it wasn't his one child that he had with [A.D.]." Defendant stated that "without no witness there's no case" and Gutter replied that that is what "usually happens." Defendant ended their meeting by saying "it's going to be good" and Gutter agreed. Defendant was arrested the next day.

¶ 14    The trial court then accepted defendant's guilty plea stating:

> "Let the record reflect that the Defendant understands the nature of the charges against him, the possible penalties under law. The plea has been given freely and voluntarily. A factual basis exists to support the plea.
>
> The plea will be accepted. There will be a finding of guilty to each of the four offenses and judgment is hereby entered on those findings."

¶ 15    The matter proceeded to a sentencing hearing. Defendant waived a presentence investigation report and the trial court sentenced him to two concurrent prison terms of 16 years for two counts of solicitation of murder, to be served consecutively to two consecutive prison terms of six years each for aggravated criminal sexual assault and attempted murder. Defendant did not file a motion to withdraw his guilty plea or a direct appeal.

¶ 16    On September 10, 2017, defendant filed a *pro se* postconviction petition alleging two

claims, ineffective assistance of counsel and that his guilty pleas were not intelligently made because the trial court failed to ensure he understood the elements of the charges and that he had the right to confront witnesses against him. The petition was supported by his own affidavit in which defendant averred, in pertinent part, that his defense counsel did not inform him of the elements of the charges. The trial court summarily dismissed the petition in a written order finding that defendant's claims did not have an arguable basis in law or fact. This appeal followed.

¶ 17                                    ANALYSIS

¶ 18    On appeal, defendant maintains that his petition should not have been dismissed where he presented an arguable claim of a violation of his due process rights because he was not adequately admonished by the trial court as required by Illinois Supreme Court Rule 402 (eff. July 1, 2012). Specifically, defendant asserts that he was not informed of the nature of the charges against him prior to pleading guilty to aggravated criminal sexual assault and attempted first degree murder where the trial court did not explain the elements of the offenses. Defendant also argues that the trial court failed to inform him that by pleading guilty he would be giving up his right to confront witnesses. Accordingly, defendant requests we reverse the circuit court's dismissal of his postconviction petition and remand the matter for second-stage proceedings under the Act.

¶ 19    In response, the State asserts that the trial court substantially complied with Rule 402 and therefore defendant's guilty plea was entered knowingly and voluntarily. The State notes that the trial court informed defendant of the charges against him: aggravated criminal sexual assault, attempted first degree murder, and two counts of solicitation of murder. The court also asked defendant if he knew what a jury trial was and after defendant stated that he did, the court

explained that by pleading guilty he was giving up the right to a jury or bench trial. The court further confirmed that no one had forced or threatened defendant to plead guilty, nor promised him anything to plead guilty, and assured that he was pleading guilty of his own free will. The State observes that the trial court then accepted defendant's plea as "knowingly and voluntarily given" and after hearing the factual basis for the charges in both cases, made a finding of guilty as to each of the charged offenses and entered a judgment of guilty on each of those findings. The State concludes that on this record, there was substantial compliance with Rule 402 and therefore the circuit court did not err when it summarily dismissed defendant's postconviction petition.

¶ 20     We begin our analysis with a discussion of the Act. The Act provides a remedy to criminal defendants who claim that substantial violations of their federal or state constitutional rights occurred in their original trials. 725 ILCS 5/122-1 *et seq.* (West 2016). A postconviction proceeding not involving the death penalty contains three distinct stages. *People v. Hodges,* 234 Ill. 2d 1, 10 (2009). At the first stage of a postconviction proceeding, a defendant need only allege enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act. *Id. at* 11-12.

¶ 21     The first stage of postconviction proceedings involves the circuit court independently reviewing the petition and, taking the allegations as true, determining if it is frivolous or patently without merit. *Id.* at 10. A petition can be dismissed as frivolous or patently without merit if it has no arguable basis either in law or in fact. *Id.* at 11-12. More precisely, a petition lacks an arguable basis in law or in fact if the claim is based on an "indisputably meritless legal theory," meaning a theory that is completely contradicted by the record, or a "fanciful factual allegation," meaning assertions that are fantastic or delusional. *Id.* at 16-17. This includes claims that are

barred by *res judicata* and forfeiture. *People v. Blair*, 215 Ill. 2d 427, 445 (2005).

¶ 22    "The court is further foreclosed from engaging in any fact finding or any review of matters beyond the allegations of the petition." *People v. Boclair*, 202 Ill. 2d 89, 99 (2002).  At this stage, a defendant "need only present a limited amount of detail in the petition" and the "threshold for survival" is "low." *Hodges*, 234 Ill. 2d at 9.  A *pro se* defendant need only "allege enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act." *Id.*  "Thus, in our past decisions, when we have spoken of a 'gist,' [of a constitutional claim] we meant only that the section 122-2 pleading requirements are met, even if the petition lacks formal legal arguments or citations to legal authority." *Id.*  "At the first stage of proceedings, we must accept as true all facts alleged in the postconviction petition, unless the record contradicts those allegations." *People v. Barghouti*, 2013 IL App (1st) 112373, ¶ 16.  This court reviews the summary dismissal of a postconviction petition *de novo*. *People v. Tate*, 2012 IL 112214, ¶ 10.

¶ 23    At issue here is whether defendant set forth the gist of a constitutional claim that he was denied due process where the trial court failed to properly admonish him as required by Rule 402.  In order to satisfy due process, the record must affirmatively demonstrate that a defendant's guilty plea was made voluntarily and intelligently.  *Boykin v. Alabama*, 395 U.S. 238, 244-45 (1969) (finding that the court cannot presume waiver of important constitutional rights from a silent record); *People v. Fuller*, 205 Ill. 2d 308, 322 (2002).  Pursuant to Illinois Supreme Court Rule 402 (eff. July 1, 2012), every defendant who enters a plea of guilty has a due process right to be properly and fully admonished. *People v. Whitfield*, 217 Ill. 2d 177, 188 (2005).  The goal of Rule 402 is to ensure that a defendant understands his plea, the rights he has waived, and the consequences of his actions. *People v. Dougherty*, 394 Ill. App. 3d 134, 139 (2009) (citing

*People v. Johns*, 229 Ill. App. 3d 740 (1992)). The rule requires "substantial, not literal, compliance with its provisions." *People v. Krantz*, 58 Ill. 2d 187, 192 (1974) (citing *People v. Mendoza*, 48 Ill. 2d 371, 373-74 (1971)). " 'Substantial compliance' means that although the trial court did not recite to the defendant, and ask defendant if he understood, all the components of Rule 402(a), the record nevertheless affirmatively and specifically shows that the defendant understood them." *Dougherty*, 394 Ill. App. 3d at 138. Illinois courts have found substantial compliance with Rule 402 where the record indicates a defendant understandably and voluntarily entered his plea, even if the circuit court failed to admonish defendant as to a specific provision. *Id.*

¶ 24     In reviewing admonishments under Rule 402, a court may consider the entire record, including the record of earlier proceedings, in determining whether the accused voluntarily pled guilty. *Id.* at 139. Although the best practice is to give admonishments at the time the circuit court accepts the waiver of the plea, failure to do so is not necessarily fatal. *People v. Dennis*, 354 Ill. App. 3d 491, 497 (2004). Rather, each case must be determined on its own peculiar circumstances, with a focus on the length of time between the waiver and plea. *Id.*

¶ 25     Failure to properly admonish a defendant does not automatically establish grounds for reversing judgment or vacating a guilty plea. *People v. Davis*, 145 Ill. 2d 240, 250 (1991). Whether reversal is required depends on whether real justice has been denied or whether defendant had been prejudiced by the inadequate admonishment. *People v. Dudley*, 58 Ill. 2d 57, 60-61 (1974). It is the defendant's burden to establish prejudice. *Dougherty*, 394 Ill. App. 3d at 139. A defendant's arguments are subject to *de novo* review. *People v. Dismuke*, 355 Ill. App. 3d 606, 608 (2005).

¶ 26                                    Elements of the Offenses

¶ 27    Defendant first asserts that the trial court failed to substantially comply with Rule 402 where it did not inform him of the elements of the offenses of aggravated criminal sexual assault and attempted first degree murder. Defendant maintains that he has set forth the gist of a constitutional claim of due process where the United States Supreme Court stated in *Bradshaw v. Stumpf*, 545 U.S. 175, 183 (2005), that a guilty plea is not knowingly and voluntarily given when a defendant is not informed of the elements of the offense.

¶ 28    In response, the State asserts that Rule 402 only requires the trial court inform the defendant of the "nature of the charge" and does not expressly require the trial court to state the elements of the offense. The State maintains that in this case, the trial court told defendant he was pleading guilty to one count of aggravated criminal sexual assault and to one count of attempted first degree murder. When asked if he understood the charges against him, defendant replied in the affirmative. The State also notes that defendant was present for the reading of the factual basis for the offenses, which also served to inform him of the nature of the charges.

¶ 29    In *Bradshaw*, the defendant pled guilty to aggravated murder and attempted aggravated murder after a colloquy with the presiding judge and the factual basis for the charges was accepted. *Id.* at 179. Thereafter, the defendant filed a federal petition for writ of *habeas corpus*, which alleged, in pertinent part, that his guilty plea was not knowing, voluntary, and intelligent because he was not aware of the specific intent element of the charge. *Id.* at 182. In reviewing the defendant's petition, the Supreme Court observed that the defendant's "guilty plea would indeed be invalid if he had not been aware of the nature of the charges against him, including the elements of the aggravated murder charge to which he pleaded guilty." *Id.* at 182-83. The Court explained, "A guilty plea operates as a waiver of important rights, and is valid only if done

- 12 -

voluntarily, knowingly, and intelligently, 'with sufficient awareness of the relevant circumstances and likely consequences.'" *Id.* at 183 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). Thus, "[w]here a defendant pleads guilty to a crime without having been informed of the crime's elements, this standard is not met, and the plea is invalid." *Id.*

¶ 30     Upon reviewing the record, however, the Court observed that while the presiding judge had not expressly informed the defendant of the elements of the offenses as charged, the constitutional requirements of his guilty plea were met where his counsel had informed him of the elements of the charges:

> "But the Court of Appeals erred in finding that [the defendant] had not been properly informed before pleading guilty. In [the defendant's] plea hearing, his attorneys represented on the record that they had explained to their client the elements of the aggravated murder charge; [the defendant] himself then confirmed that this representation was true. [Citation.] While the court taking a defendant's plea is responsible for ensuring 'a record adequate for any review that may be later sought' [citation], we have never held that the judge must himself explain the elements of each charge to the defendant on the record. Rather, the constitutional prerequisites of a valid plea may be satisfied where the record accurately reflects that the nature of the charge and the elements of the crime were explained to the defendant by his own, competent counsel." *Id.*

¶ 31     Here, the record is clear that the trial court did not state the elements of the offenses to defendant at the plea hearing or at any other time. While the record does indicate that defendant was arraigned and made aware of the charges against him, the elements of those charges were not expressly stated on the record. The record further fails to demonstrate that defense counsel

informed defendant of the elements of the offenses. Though the record indicates that defense counsel spoke with defendant about the charges, it is silent as to whether the specific elements of the offenses were discussed. Moreover, while the record indicates that defense counsel spoke with defendant regarding the ramifications and possible sentences he could receive if convicted of the charged offenses, it does not disclose that defendant was made aware of the elements of the offense as is his argument in his postconviction petition. Indeed, defendant averred in his affidavit that his counsel did not so advise him and, at this stage in the postconviction proceedings, we must accept as true all facts alleged unless they are contradicted by the record. *Barghouti*, 2013 IL App (1st) 112373, ¶ 16. Thus, applying *Bradshaw* to the record before us, it appears defendant has stated the gist of a constitutional claim to survive the first-stage dismissal of his postconviction petition. See *id.*

¶ 32    In rendering this determination, we have also considered the Third District case *People v. Stone*, 2018 IL App (3d) 160171, which defendant raised in his reply brief. In that case, the defendant directly appealed his guilty plea arguing that the trial court itself was required to admonish him of the elements of the charges so as to comply with Rule 402 and cited *Bradshaw* in support. *Id.* ¶ 14. The Third District instead found the defendant was properly admonished and was not required to advise him of the elements of the offense. *Id.* ¶ 16. In so holding, the reviewing court addressed the defendant's reliance on *Bradshaw*, maintaining that *Bradshaw* "rejects defendant's assertion that the court must explain the elements of the charge before accepting a guilty plea. Instead, [*Bradshaw*] indicates that this obligation is best left to defense counsel." *Id.* ¶ 17.

¶ 33    Defendant requests that we find *Stone* to be "incorrectly reasoned;" however, we find that *Stone* is not in disagreement with our conclusion in this case. We first observe that the

procedural posture of our case varies significantly from that of *Stone*. Whereas the *Stone* defendant raised this issue on direct appeal, defendant here raises it in a postconviction petition which was dismissed at the first stage. As previously discussed, at this stage a defendant need only assert the gist of a constitutional claim and the threshold of survival is low. *Hodges*, 234 Ill. 2d at 9. Second, unlike the defendant in *Stone*, defendant here is not merely alleging that the trial court alone had a duty to inform him of the elements of the offenses, but that both the trial court *and* defense counsel failed to do so and thus his due process rights were violated. This nuanced argument is exactly what the *Stone* court addresses when distinguishing *Bradshaw*; that the Supreme Court "indicated that this obligation is best left to defense counsel." *Stone*, 2018 IL App (3d) 160171, ¶ 17. Here, defendant's postconviction petition alleged defense counsel did not inform him of the charges, and he provided his own affidavit in support of that fact. Moreover, the record of the plea hearing is silent as to whether defense counsel informed him of the elements of the offense. In light of these facts and the law, we conclude that the circuit court's dismissal of defendant's postconviction petition was in error.

¶ 34　In reaching this conclusion, we observe that the State makes no effort to distinguish *Bradshaw* or explain how it is inapplicable to the case at bar. Instead, the State relies on *People v. English*, 42 Ill. App. 3d 958 (1976), and *People v. Davis*, 24 Ill. App. 3d 758 (1974), as being instructive. We disagree. Considering the fact *English* was decided over 40 years ago and before the Supreme Court's *Bradshaw* decision, we are not moved by the State's reliance on this case. In *English*, the defendant pleaded guilty to carrying a firearm into an establishment licensed to sell intoxicating beverages. *English*, 42 Ill. App. 3d at 959. On appeal, he maintained that his guilty plea was not given in accordance with Rule 402 where he was not personally informed of the nature of the charge. *Id.* at 960. Upon examination of the record, the

reviewing court observed that the "public defender representing [the defendant] assured the court that he had explained the offense to defendant, who indicated that he understood the nature of the charge." *Id.* When the trial court indicated it was not satisfied with this statement, the public defender had defendant speak to the charges as he understood them. *Id.* The trial court then accepted that the defendant understood the nature of the charges and entered the guilty plea. The reviewing court found that, based on this record, the trial court substantially complied with Rule 402. *Id.* Unlike in *English*, the record here does not disclose whether defense counsel informed defendant of the nature of the charges. The record also does not include a lengthy colloquy with the trial court regarding the nature of the charges.

¶ 35    While the facts of *Davis* are similar to the facts in the case at bar, we decline to find *Davis* supports the dismissal of defendant's first-stage postconviction petition. In *Davis*, the defendant pled guilty to two counts of armed robbery. *Davis*, 24 Ill. App. 3d at 759. On appeal, the defendant maintained that the trial judge failed to inform her of the nature of the charges and determine that she understood them. *Id.* at 761. The *Davis* court observed that, "[t]he Illinois Supreme Court has recently held that the trial judge's reference to the offense by name accompanied by an accused's acquiescence to the recital of the anticipated prosecution evidence is sufficient to satisfy the requirement of Rule 402(a)(1)." *Id.* (citing *People v. Krantz*, 58 Ill. 2d 187, 193 (1974)). Upon examining the record, the reviewing court noted that the defendant was informed, on two separate occasions, that she was charged with two counts of armed robbery. Additionally, "neither the defendant nor her counsel demurred to the prosecutor's rendition of the factual basis of the charges." *Id.* Thus, the reviewing court concluded that the defendant had been properly admonished under Rule 402. *Id.* Although under *Davis* it is arguable that the facts in this case would be sufficient to find compliance with Rule 402, the *Davis* court did not

have the benefit of the Supreme Court's *Bradshaw* decision, which effectively calls into question whether such a practice satisfies due process. Accordingly, we remand the matter to the circuit court for second-stage proceedings under the Act.

¶ 36    Given our disposition in this case, we need not address defendant's remaining claim that he was not admonished about his right to confront witnesses. See *People v. Robinson*, 2020 IL 123849, ¶ 83; *People v. Rivera,* 198 Ill. 2d 364, 370-74 (2001); *People v. Rogers,* 372 Ill. App. 3d 859, 868 (2007).

¶ 37                                        CONCLUSION

¶ 38    For the reasons stated above, we reverse the judgment of the circuit court and remand the matter for further proceedings under the Act.

¶ 39    Reversed and remanded.