# Illinois Official Reports

## Appellate Court

---

### *People v. Cuevas*, 2018 IL App (2d) 151100

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MIGUEL G. CUEVAS, Defendant-Appellant. |
| District & No. | Second District<br>Docket Nos. 2-15-1100, 2-15-1101 cons. |
| Filed | June 18, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Du Page County, Nos. 11-CF-1616, 11-CF-1792; the Hon. Brian F. Telander, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Thomas A. Lilien, and Elena B. Penick, of State Appellate Defender's Office, of Elgin, for appellant.<br><br>Robert B. Berlin, State's Attorney, of Wheaton (Lisa Anne Hoffman, Assistant State's Attorney, of counsel), for the People. |
| Panel | JUSTICE McLAREN delivered the judgment of the court, with opinion.<br>Justices Zenoff and Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant, Miguel G. Cuevas, appeals the second-stage dismissal of his petition filed under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2012)) in connection with his conviction of two counts of possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2010)). He contends that he made a substantial showing of ineffective assistance of counsel when he asserted that counsel failed to move to reconsider his sentence to preserve his right to appeal and failed to provide evidence in mitigation at sentencing. We reverse and remand for third-stage proceedings.

¶ 2                                    I. BACKGROUND

¶ 3        Defendant was charged with two counts in two consolidated cases and ultimately pleaded guilty with the stipulation in one case that he delivered more than five grams of cocaine (*id.*), making him ineligible for probation. Defendant had been released on bond in the first case when he committed the offense in the second case.

¶ 4        In July 2012, defendant pleaded guilty. He was represented by private counsel at the plea hearing and was fully admonished of the sentencing range of 4 to 15 years' incarceration on each count. The factual basis for the plea stated that, through the use of a confidential informant and controlled drug buys, officers obtained warrants to search defendant's home and recovered cocaine and other drugs. Defendant told the police that he sold the drugs to support his family.

¶ 5        The court accepted the guilty plea and ordered a presentence investigation report (PSI). On October 2, 2012, defendant failed to appear, and a bond forfeiture judgment was entered. On December 7, 2012, his counsel appeared and stated that defendant was picked up on warrants. Counsel told the court that defendant put himself into a treatment center for heroin addiction after he missed his court date. The court noted that the PSI had not been completed due to defendant's failure to appear and continued the matter for sentencing.

¶ 6        On January 9, 2013, the sentencing hearing was held. The PSI showed that defendant had a long history of drug use beginning at age 10 and a long history of drug-related offenses. He was expelled from his first high school for delivery and possession of drugs on school property and dropped out of his second high school. He later obtained a GED and attended a technical school during a time when he briefly stopped using drugs. Defendant reported no drug use since October 2012 and stated that he was involved in a methadone program.

¶ 7        Defendant gave a statement for the PSI in which he said that he sold drugs to support his habit and that, when the offenses occurred, he was thinking only of his habit so that he would not get sick. He said that, when he got out on bond, his addiction got worse, and he tried to get clean. He said that he could stay clean with help, that his family deserved better from him, and that, if he did not get clean, he would end up dying.

¶ 8        The PSI reported multiple unverified periods of employment. In regard to family, it stated that he had a 12-year relationship with Tamara Matelske, although defendant sought an order of protection against her in 2007. Defendant had two sons with Tamara. Their relationship ended when he was released on bond. Tamara was a codefendant in one of these cases and was on probation. The children were in the custody of defendant's father and stepmother. Defendant said that he was still close to Tamara but needed to take care of his own problems.

Defendant moved in with Maria Gonzalez in April 2012, but he had not spoken with her since his arrest in December 2012. The PSI showed that defendant was convicted in 2009 of endangering the life or health of a child when he allowed his children to roam around in an apartment parking lot unattended and unsupervised.

¶ 9 The PSI stated that, when the first search warrant was executed, one child was present in the home with the illegal drugs. The Department of Children and Family Services was notified, and a neglect petition was pending in juvenile court. A police investigator testified for the State that, on the date of the second offense, cocaine was found in defendant's kitchen and in the children's bedroom. He said that the children were in the house when the warrant was executed. He said that defendant's bond was reduced in the first case because he was going to cooperate with a police investigation, but then he failed to do so.

¶ 10 Defense counsel did not present any witnesses. Defendant told the court that he was ashamed of his life and that he hurt his family and children. He said that he needed to be a better role model for his children and that they deserved better than what he had been.

¶ 11 The State asked for an eight-year sentence in each case. Defense counsel asked for the minimum of four years, arguing that defendant's addiction was the root of his problems and that he had sought treatment. The trial court sentenced defendant to seven years' incarceration on each count, to run consecutively, and recommended drug treatment. The court observed that addiction had ruined defendant's life and that his children deserved better. The court found "extremely aggravating" that drugs were found at the home when at least one child was present. The court further stated that it was difficult to imagine what type of environment could be worse for the children and that defendant obviously did not work enough to support the children. The court also noted defendant's "terrible history" of criminal offenses. The court found very little rehabilitative potential, based on defendant's admission about his drug use and past failures at rehabilitation. The court admonished defendant of his right to appeal and his need to file a motion to withdraw his plea or reconsider the sentence within 30 days. See Ill. S. Ct. R. 604(d) (eff. Jan. 1, 2013). He was also admonished of his right to an attorney if he could not afford one.

¶ 12 On January 22, 2013, defense counsel appeared and moved to vacate the bond forfeiture. The motion was denied. On January 31, 2013, defendant mailed a *pro se* letter to the clerk of the court, stating that he was writing to appeal his sentence in one of the cases. He stated that he asked his counsel to appeal it on the date of sentencing but that counsel failed to do so. The clerk docketed the letter as a notice of appeal and sent defendant a letter stating that, in order to file it, he would have to pay a fee. In April 2013, the appeal was dismissed for failure to comply.

¶ 13 In May 2013, defendant filed a motion to proceed as a poor person and a request for free transcripts. The court denied the motion on the basis that the time for filing an appeal had passed and there was no litigation pending. Defendant then moved for a new judge, including an allegation that he wanted to appeal but that his counsel told him that it would be pointless, which was why he sent a letter to the clerk. He also alleged that he had affidavits from family members attesting to his rehabilitative potential. The court denied the motion on the basis that there was no pending petition on file. The court also denied a motion for appointment of the public defender.

¶ 14 On March 14, 2014, defendant filed a *pro se* postconviction petition, alleging in part that his counsel was ineffective because he failed to present evidence in mitigation at sentencing

and refused defendant's request to file an appeal. Defendant attached statements from family members stating that defendant struggled with addiction but was a good person who deserved a chance. The trial court appointed the public defender and docketed the petition for second-stage proceedings.

¶ 15 The public defender filed an amended petition, again alleging in part ineffective assistance of counsel. She attached an affidavit from defendant averring that his trial counsel did not visit with him to discuss sentencing, did not request records of his drug treatment, and did not call any witnesses at the sentencing hearing. He averred that his mother and brother were present in the courtroom and that he had told his counsel that they would testify for him. He further averred that, when his counsel visited him in the holding cell after sentencing, he told counsel that he wanted to appeal the sentence. However, counsel left the cell to speak with defendant's family and never contacted him again. Defendant told his brother to call counsel and make sure that he appealed. But defendant's brother reported that his calls were not returned. Defendant filed his own notice of appeal because he did not know if counsel had done so. He also averred that he had difficulties receiving communications during the relevant time period and that he did not know that he was required to pay a fee to perfect his appeal.

¶ 16 Also attached to the petition was an affidavit from Tiffany Matelske, Tamara's sister. She averred that Tamara experienced medical problems that required frequent hospitalization and restricted her from attending to the children or household. She averred that defendant took responsibility for the children including attending to meals, the children's school and homework, and household duties, along with his own education and work. She averred that defendant felt overwhelmed but that he did the best that he could to make sure that his family was taken care of. She further averred that, since the sentencing, Tamara passed away, leaving the children without parents. She stated that the children looked up to defendant, that he was their security blanket, and that she believed that defendant understood the severity of his actions and was truly remorseful. She averred that she would have been willing to testify at defendant's sentencing hearing had his counsel contacted her.

¶ 17 Megan Tor, another sister of Tamara's, also provided an affidavit stating positive things about defendant, including that she had seen him interact with his children and that he was an amazing father. She stated that defendant put his family first and did everything for them. She said that, no matter what circumstances came his way, he always made sure that his children were well taken care of, and his children would benefit greatly from having him in their lives. She averred that she would have been more than willing to testify for defendant at sentencing had counsel contacted her.

¶ 18 Brenda Marinelli, Tamara's mother, provided a similar affidavit, averring that defendant was doing everything that he could to have a good family life, including going to school, taking care of his children, and taking on work of any kind to keep a roof over their heads. She said that defendant was one of the most caring and loving fathers she had ever known. She averred that she and her daughters tried to talk to defendant's trial counsel many times and that he would never call back. She said that he failed to let them know about the sentencing hearing so that they could testify. Finally, there was an affidavit from a person averring that defendant obtained his GED and went to school to become a mechanic.

¶ 19 The State moved to dismiss, arguing that trial counsel's decision not to present evidence in mitigation was strategy and that the evidence in the affidavits was cumulative of the information in the PSI. The State also argued that there were no nonfrivolous grounds upon

which to base a motion to reconsider the sentence and that defendant failed to establish that his counsel knew that he wanted to appeal. Defendant argued that an evidentiary hearing was necessary.

¶ 20 The trial court, with a different judge presiding, dismissed the petition. The court stated that, in light of the record, the potential witnesses would have provided no new information. The court also stated that there was no evidence in the record that defendant's trial counsel had been retained for an appeal. The court noted that defendant was properly admonished about his appeal rights and that a rational defendant would not have appealed the sentence. Thus, the court found that there was no prejudice. Defendant appeals.

¶ 21                                    II. ANALYSIS

¶ 22 Defendant contends that he made a substantial showing that his counsel was ineffective for failing to appeal his sentence.

¶ 23 The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2012)) provides a three-stage process for the adjudication of a postconviction petition. *People v. Johnson*, 2017 IL 120310, ¶ 14. This appeal concerns a dismissal at the second stage.

¶ 24 At the second stage, the defendant bears the burden of making a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). In assessing whether that burden has been met, all well-pleaded facts not positively rebutted by the trial record are taken as true. *Id.* If the court finds that the defendant has not met his burden, the petition is dismissed. *People v. Tate*, 2012 IL 112214, ¶ 10. We review *de novo* a dismissal at the second stage. *People v. Sanders*, 2016 IL 118123, ¶ 31.

¶ 25 Generally, to prevail on an ineffective-assistance claim, a defendant must show that defense counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). A meritorious ineffective-assistance claim can be based on counsel's failure to appeal a judgment that was entered on a guilty plea. See *Roe v. Flores-Ortega*, 528 U.S. 470, 477-78 (2000). Thus, a meritorious claim can also be based on counsel's failure to file a postplea motion as required to perfect an appeal from a judgment. See *People v. Hughes*, 329 Ill. App. 3d 322, 325-26 (2002). An attorney who disregards the defendant's specific instruction to file a notice of appeal is professionally unreasonable, and the failure cannot be considered a strategic decision. *Flores-Ortega*, 528 U.S. at 477-78. If the defendant did not specifically instruct the attorney to file a notice of appeal, ineffective assistance can still be demonstrated by showing that the attorney failed to consult with the defendant about filing an appeal and that either (1) a rational defendant would have wanted to file an appeal (for example, because there were nonfrivolous grounds for an appeal) or (2) the defendant reasonably demonstrated that he desired to appeal. See *id.* at 480; *People v. Torres*, 228 Ill. 2d 382, 396 (2008).

¶ 26 Further, when counsel has reason to know that a defendant is interested in securing relief from a conviction, counsel has a duty to consult with the defendant about pursuing an appeal. *People v. Rogers*, 372 Ill. App. 3d 859, 865 (2007) (citing *Flores-Ortega*, 528 U.S. at 480). When the conviction arises from a guilty plea, that duty also necessarily entails a duty to consult about the necessary steps that must be taken in order to appeal, such as moving to withdraw the plea or to reconsider the sentence. See *id.* at 865-66 (discussing consultation about moving to withdraw the plea).

¶ 27    Here, defendant averred that he specifically asked his counsel to appeal the sentence and that counsel did not do so and did not consult with him about it. He further averred that family members attempted to reach his counsel about an appeal and were ignored. At the second stage, those allegations are taken as true. Thus, defendant made a substantial showing that his counsel's performance fell below an objective standard of reasonableness. The State argues, however, that defendant failed to make a substantial showing of prejudice.

¶ 28    Although *Strickland* requires a defendant to establish prejudice, in *Flores-Ortega* the Supreme Court held that, when counsel fails to file an appeal at the request of a defendant, the defendant must establish only that he was deprived of an appeal that he otherwise would have taken. *Flores-Ortega*, 528 U.S. at 484. This is because, in such a case, the alleged deficient performance led not to a judicial proceeding of disputed reliability but instead deprived the defendant of a proceeding altogether. *Id.* at 483. The Court explained that prejudice is essentially presumed because of the unreasonable burden that a *pro se* defendant faces without the assistance of counsel, as "it is unfair to *require* an indigent, perhaps *pro se*, defendant to demonstrate that his hypothetical appeal might have had merit before any advocate has ever reviewed the record in his case in search of potentially meritorious grounds for appeal." (Emphasis in original.) *Id.* at 486.

¶ 29    However, in *People v. Edwards*, 197 Ill. 2d 239 (2001), our supreme court, arguably in *dicta*, stated that it would not extend the presumption from *Flores-Ortega* to second-stage postconviction proceedings. In *Edwards*, the defendant entered a negotiated guilty plea and alleged in a *pro se* postconviction petition that his counsel was ineffective for failing to file a motion to withdraw the guilty plea in order to preserve his right to appeal. *Id.* at 240-41. The petition was summarily dismissed, and our supreme court held on appeal that the petition presented the "gist" of an ineffective-assistance-of-counsel claim. The court noted that, under *Flores-Ortega*, the *pro se* defendant could not be required to demonstrate how his appeal would have been successful in order to establish prejudice. However, the court also stated that, in order to obtain an evidentiary hearing on the issue, the defendant must make a substantial showing "that he told his trial counsel to file a motion to withdraw his guilty plea and that counsel was constitutionally ineffective for failing to do so." *Id.* at 257. The court further stated that "[s]uch a showing will necessarily entail some explanation of the grounds that could have been presented in the motion to withdraw the plea." *Id.* at 258. The court reasoned that "[s]ince defendant will be at the second stage of the post-conviction proceedings and will be represented by an attorney, rather than proceeding *pro se*, this will not present an unreasonable burden." *Id.*

¶ 30    Although defendant argues that the court's statements in *Edwards* concerning second-stage proceedings were *dicta*, this court has followed them. In *People v. Gomez*, 409 Ill. App. 3d 335, 339-40 (2011), we held that, under *Edwards*, prejudice was presumed only at the first stage and a defendant at stage two must explain the basis upon which he could have moved to withdraw his plea such that there was a reasonable probability that the motion would have been granted. The Fourth District has also applied *Edwards* to a third-stage claim that counsel failed to file a motion to reconsider a defendant's sentence, holding that the defendant was required to present evidence of the grounds that could have been raised in the motion. *Hughes*, 329 Ill. App. 3d at 325-26; see also *People v. Jennings*, 345 Ill. App. 3d 265, 273-74 (2003) (discussing *Edwards* in connection with the failure to file a motion to reconsider sentence).

¶ 31     Defendant also cites *Lee v. United States*, 582 U.S. ___, ___, 137 S. Ct. 1958, 1967 (2017), in which a defendant was misinformed about deportation and would not have pleaded guilty had he been correctly advised, and the Supreme Court, under the unusual circumstances of the case, did not require him to prove that he would have had a viable defense in order to show prejudice. But *Lee* did not involve a second-stage postconviction claim concerning the failure to file a motion to reconsider the sentence, and our supreme court has rejected the argument that *Lee* lowered the general threshold for establishing prejudice. See *People v. Brown*, 2017 IL 121681, ¶ 53.

¶ 32     Under *Edwards* and *Gomez*, because the proceedings were at the second stage, prejudice was not presumed, and defendant was required to establish a justifiable basis for filing a motion to reconsider the sentence such that there was a reasonable probability that the motion would have been granted. See *Gomez*, 409 Ill. App. 3d at 340 (stating this in relation to a motion to withdraw a plea). The determination of prejudice is more than an outcome-determinative test. *People v. Phyfiher*, 361 Ill. App. 3d 881, 886 (2005). The defendant must show that counsel's deficient performance rendered the result unreliable or fundamentally unfair. *Id.*

¶ 33     Here, although the evidence in aggravation was quite strong, we find that defendant met his burden by providing affidavits from witnesses who would have testified to rebut information in the PSI about his parenting, education, employment, and general character, especially in relation to his care of his children while Tamara was ill. Given that the court found very little rehabilitative potential, found "extremely aggravating" the fact that there were drugs in the home while the children were present, and found that defendant did not support the children, the evidence was particularly relevant to rebut the impression presented by the State that defendant had little to no regard for his children. Further, the PSI's information about his employment and education was unverified or minimal, and no evidence about Tamara's illness was presented at sentencing.

¶ 34     The State argues that the evidence of Tamara's death was irrelevant and that the remainder was cumulative of that in the PSI or rebutted by it. While Tamara's death occurred after sentencing and thus was not relevant (see *People v. Vernon*, 285 Ill. App. 3d 302, 304 (1996)), her illness and its effect on defendant and his care for his children were relevant and were not included in the PSI. Where the proposed mitigating evidence provides a more complete picture of the defendant's background, including specific details, that evidence cannot be considered cumulative of the evidence presented at the sentencing hearing. See *People v. Towns*, 182 Ill. 2d 491, 521 (1998) (evidentiary hearing necessary in a capital case when defendant alleged that counsel failed to present witnesses to show traits that differed from those presented to the fact finder and there appeared to be no obvious disadvantage to presenting the evidence).

¶ 35     Given defendant's claim that he told his counsel that he had people who would testify for him, and given that he provided affidavits showing that those people would have provided relevant mitigating evidence, defendant made a substantial showing that there is a reasonable probability that the trial court would have granted the motion to reconsider the sentence.[1]

---

[1]We observe that, because that evidence was not provided at sentencing, the trial court would have had the discretion to disregard it on reconsideration. *People v. Burke*, 226 Ill. App. 3d 798, 803 (1992). However, as we discuss below, defendant also made a substantial showing that counsel was ineffective for not presenting this evidence at sentencing.

Keeping in mind that prejudice is more than an outcome-determinative test, we further find that defendant made a substantial showing that counsel's deficient performance rendered the result unreliable or fundamentally unfair, especially in light of the claim that defendant was denied his ability to appeal altogether.

¶ 36    In a related argument, defendant next contends that he made a substantial showing of ineffective assistance of counsel because his counsel failed to present any evidence in mitigation at sentencing.

¶ 37    "Generally, judicial scrutiny of defense counsel's competency in decisions regarding presentation of mitigating evidence is highly deferential to counsel's judgment." *People v. Orange*, 168 Ill. 2d 138, 170 (1995). However, counsel has a duty to investigate potential sources of mitigating evidence or must have a reason not to investigate. *Id.* "[S]uch deference is not warranted where there is proof that the lack of mitigating evidence is due to counsel's failure to properly investigate and prepare the defense." *Id.*; see also *Towns*, 182 Ill. 2d at 514 ("[C]ounsel's presentation of mitigation is not deemed to be a legitimate strategy without a reasonable investigation into mitigating circumstances.").

¶ 38    Here, defendant alleged that counsel failed to investigate mitigating evidence and that he provided affidavits showing that multiple people were willing to provide mitigation testimony and that they were not contacted. Defendant also averred that he told counsel that there were people who would testify for him. Those allegations must be taken as true. Thus, defendant alleged deficient performance that could not be strategy. The question is whether defendant made a substantial showing of prejudice.

¶ 39    As previously discussed, defendant provided evidence that would have rebutted the State's suggestion that he was a bad father who had a poor work history and little rehabilitative potential, which could have affected the sentence. Meanwhile, nothing in the record suggests that it would have been harmful to present the mitigating evidence. Thus, in accordance with our previous discussion of prejudice, we find that defendant made a substantial showing of prejudice on this issue as well.

¶ 40                              III. CONCLUSION

¶ 41    Defendant made a substantial showing of ineffective assistance of counsel when he asserted that counsel failed to move to reconsider his sentence to preserve his right to appeal and failed to provide evidence in mitigation at sentencing. Accordingly, the judgment of the circuit court of Du Page County is reversed, and the cause is remanded for third-stage proceedings.

¶ 42    Reversed and remanded.