NOTICE

Decision filed 07/01/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 220638-U

NO. 5-22-0638

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 12-CF-136 |
| | ) | |
| DORIAN D. WILLS, | ) | Honorable |
| | ) | Roger B. Webber, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court.
Justices Cates and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the circuit court's denial of defendant's amended postconviction petition following a third-stage evidentiary hearing, where defendant failed to make a substantial showing that, but for plea counsel's deficient performance, he would have received a lesser sentence after he entered into a partially negotiated guilty plea.

¶ 2    Defendant, Dorian D. Wills, appeals the Champaign County circuit court's order denying his petition filed under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2020)) following a third-stage evidentiary hearing. On appeal, defendant argues that the circuit court erred by denying his petition at the third stage, where the evidence established that his plea counsel failed to consult with him after he requested to file an appeal and he had nonfrivolous grounds to file a motion to withdraw his guilty plea because he was denied effective assistance of counsel at the postplea sentencing hearing. We affirm.

1

¶ 3                                  I. Background

¶ 4    On October 22, 2012, defendant, represented by private counsel (plea counsel), pled guilty

to the offense of aggravated kidnapping (720 ILCS 5/10-2(a)(3) (West 2010)), a Class X felony

(*id.* § 10-2(b)), in exchange for the State's dismissal of a robbery charge and recommendation of

a 20-year sentencing cap.[1] Defendant acknowledged his understanding that, in exchange for his

guilty plea, one charge would be dismissed, and the sentence would range "somewhere between 6

years and 20 years as opposed 6 years and 30."

¶ 5    The State offered the following factual basis for the plea:

"[O]n October 21 of 2011, [the victim] was walking in the campus area in Champaign-

Urbana when he reports that four to five men forced him into a minivan and beat him

repeatedly. The victim lost consciousness. His clothing was taken. He suffered facial

broken bones. He suffered multiple abrasions about his entire body and was hospitalized

for some time.

        These defendants were tied to this as the co-defendant Anthony Davis took the

victim's phone during the kidnapping and sold it to Eric Davis, who would testify and who

identified Anthony Davis in a lineup.

        Anthony Davis gave a full statement, as did Emily Crowder and Kenson Reed, who

were present inside of the van and who would also testify that this defendant[,] as well as

Anthony Davis and Ralph Gray[,] all took part in beating this victim in different locations

in Champaign County. That's all."

_____

        [1]The State previously filed a notice of intent to seek an extended-term sentence of up to 60 years
in prison, alleging that the offense was accompanied by exceptionally brutal or heinous behavior.

¶ 6　　On December 10, 2012, the circuit court held a sentencing hearing. The court stated that it reviewed and considered the presentencing investigation (PSI) report and victim impact statement. The PSI report indicated that defendant was 18 years old at the time the report was prepared and 17 years old at the time of the offense at issue. Defendant had a prior juvenile record, which included the following: a 2008 battery that resulted in 24 months' probation, a 2009 aggravated battery that resulted in his commitment to the Illinois Department of Juvenile Justice, and a 2010 battery with bodily harm. Defendant was also ordered to pay fines and costs associated with a 2011 assault charge. Defendant advised that he became a member of the "Black P Stone" street gang at age seven but recently left the gang. Defendant had one child, but he did not pay child support and was not ordered to do so. Defendant had a good relationship with his mother, former stepfather, and four siblings. Defendant left high school after the ninth grade due to his incarceration in the Illinois Department of Juvenile Justice but earned his general educational development (GED) diploma in November 2011. Defendant never held a job, but he expressed a desire to pursue training in residential wiring, plumbing, and carpentry. The court previously ordered defendant to complete anger management classes but there was no record of him completing the classes.

¶ 7　　According to the PSI report, defendant reported that he drank alcohol, specifically hard liquor, daily. He began drinking at age six but started drinking regularly at age nine. However, it was noted that defendant previously reported that he began drinking alcohol at age 13. Defendant claimed that he committed the kidnapping while under the influence of alcohol. Defendant also used cannabis daily and cocaine twice weekly. Defendant never participated in any form of substance abuse treatment. Defendant advised that, during his incarceration, he began studying the Bible, which helped him "learn to deal with things and do things differently." Defendant also began attending Alcoholics Anonymous (AA) and Narcotics Anonymous (NA) meetings.

¶ 8    Plea counsel submitted into evidence a "Meeting Attendance Sheet" which documented defendant's attendance at an AA class from June 5, 2012, to December 4, 2012. Plea counsel also submitted a character letter regarding defendant, which was prepared by a fellow inmate. The letter indicated that defendant was a good person, who found God in jail. The inmate asked that the circuit court have mercy on defendant and "judge him by his heart." Plea counsel indicated that defendant gave him the documents the day of the hearing.

¶ 9    The victim impact statement, prepared by the victim, indicated that the victim had spent the past year "recovering from the single most horrific event that has ever occurred in [his] life." The victim, an Australian citizen and professor, traveled to Urbana-Champaign, Illinois, for work meetings. While walking back to his hotel room on October 21, 2011, the victim was "attacked and kidnapped by a group of unknown individuals simply because [he] was in the wrong place at the wrong time." Thereafter, several individuals severely beat the victim in different locations. The victim recalled the individuals "repeatedly bashing [him], punching [him], kicking [him], and hitting [him] with other objects over and over again." The victim also recalled that "[t]hey were laughing and jumping around and appeared to be having a good time." The victim explained:

> "At one point in time when I knew I was in serious danger and I believed I would not live through the night, I decided to plead with them. I begged them to stop hurting me and I begged for my life. I also pleaded with them by telling them I am a father and I have young children. This only made them laugh harder and it seemed to spur them on even more with the attack continuing again afterwards. On several occasions they came up close to my face to say how they were going 'to f*** me up' before they attacked me again and again. At one point in time, I have a memory of one of them saying how they were going to kill me."

4

The victim lost consciousness during the beating and later awoke in a ditch in the middle of a corn field. The individuals had taken all his possessions, his shoes, and most of his clothing. Due to the freezing temperatures, the victim was unable to feel or control his feet and his body was shaking uncontrollably. The victim spent the night wrapped in a tarp in a nearby barn. He was able to flag down a car the following morning.

¶ 10     The victim received medical treatment for several weeks in Champaign and Chicago before he was cleared to fly home to Australia. The victim continued to receive intensive treatment and therapy for many months afterwards. As a result of the attack, the victim suffered the following: a broken nose; a broken right eye socket; a broken vertebrae in his thoracic spine; multiple internal brain hemorrhages; large lacerations and cuts to his head, face, and body; a locked jaw; frost bite to both feet and resulting neuralgia; nine broken teeth; ligament and tendon damage to his left wrist; a torn right bicep tendon; bruising and swelling to multiple parts of his body; eye hemorrhages; and several other soft-tissue injuries. The victim was also diagnosed with posttraumatic stress disorder (PTSD) and suffered from multiple psychological issues, including anhedonia, withdrawal, disturbed sleep with violent nightmares, loss of sense of humor, decreased appetite, and decreased libido. The victim later learned that some of his psychological issues were a result of the brain damage he suffered during the attack. The victim felt as though he was "lucky" to have survived the attack.

¶ 11     The State argued that that circuit court should sentence defendant to 20 years in prison. The State noted that defendant had a criminal history of similar offenses dating back to 2008. The State noted that it recommended a sentencing cap of 20 years to account for defendant's age and his admission of involvement in the kidnapping. The State argued that defendant did not pay child support, had no source of income, and failed to go to previously ordered anger management

5

classes. The State also noted that defendant attempted to use his substance abuse as mitigation evidence but gave inconsistent information about his use of drugs and alcohol. The State additionally highlighted the trauma the victim suffered from the attack.

¶ 12    Defense counsel responded as follows:

"It doesn't take much evidence or argument to get to the 20 years in this case. The victim impact statement was one of the most horrendous things I have ever read.

In analyzing how I respond to that as his attorney, I looked for what could be mitigation. I think there are three things.

First, as [the State] mentioned, he is young. He has the potential for rehabilitation.

The second thing is he was quick to admit his guilt, both to the police and gave them a full confession.

And then he did plead guilty. He didn't make this man come in here and recount this to a room full of strangers.

And last, it's a small point but something to mention, it's expensive to fly from Australia to here and the county was saved that expense.

So, I mean, if we are grasping at straws, I want you to have them all. Thank you."

¶ 13    Next, defendant made a statement in allocution. Defendant acknowledged that he had "done something wrong and probably something wrong all [his] life." Defendant stated that he had never thought about what he wanted to do with his life, aside from wanting "to be cool and hang out with all the older guys." Defendant stated that he began reading the Bible in jail and that he "learned to see a lot of things for what they really [were] and to see [himself] for what [he] really was," and that he had to make a change. Defendant noted that he pled guilty and knew he had to suffer consequences for his actions. Defendant apologized to the victim and the victim's family,

as well as his own family. Defendant indicated that he wanted to change and make a positive impact in the community.

¶ 14    The circuit court stated that it considered the evidence presented, as well as the statutory factors in mitigation and aggravation. Regarding mitigation, the court stated that defendant was only 19 years old, that he pled guilty, and that he was "an intelligent young man." As such, the court found that defendant did "have rehabilitative potential." Regarding aggravation, the court noted that defendant had prior juvenile adjudications for battery. The court found that defendant had "proven himself to be a dangerous young man." The court found that the crime was "horrendous" and noted that it had "to fashion a sentence that [would] not only deter [defendant] but other young men similarly situated from committing this type of an offense." The court noted that the statutory maximum for the offense was 30 years but that the State had indicated "they were going to knock 10 years off that sentence, again, because the defendant pled guilty, he cooperated with the police, basically made a determination that certain mitigating factors existed."

¶ 15    The circuit court sentenced defendant to 20 years in prison with credit for time served. The court admonished defendant that he had 30 days to file a written motion requesting to vacate the judgment and for leave to withdraw his guilty plea.

¶ 16    On April 12, 2013, the circuit clerk received a letter from defendant. Defendant requested a copy of the docket sheet or records showing the date plea counsel filed his "Motion for Reduction of Sentence and/or Notice of Appeal." Defendant later discovered that plea counsel had not filed any postplea motions.

¶ 17    On May 17, 2013, defendant filed a *pro se* motion for leave to file a late notice of appeal "relating to Ineffective Assistance of [plea] counsel." Defendant alleged that plea counsel was ineffective for failing to file a motion to reduce sentence or a notice of appeal after defendant

7

requested that counsel do so on December 10, 2012. In an affidavit attached to the motion, defendant attested that plea counsel stated, "It would be a waste of time."

¶ 18    On May 29, 2013, the circuit court directed the circuit clerk to file defendant's notice of appeal but noted that defendant was required to file a motion to withdraw his guilty plea prior to filing an appeal. The court noted that defendant never asked plea counsel to file a motion to withdraw his guilty plea. The court appointed the Office of the State Appellate Defender (OSAD) to represent defendant on appeal.

¶ 19    On June 27, 2013, OSAD filed a motion to dismiss the appeal based on defendant's failure to withdraw his guilty plea within 30 days of sentencing. Defendant subsequently filed a motion to voluntarily dismiss his appeal, which the Fourth District granted on July 12, 2013.[2]

¶ 20    On July 26, 2013, defendant filed a *pro se* postconviction petition, along with his own supporting affidavit. Defendant alleged that plea counsel was ineffective for failing to file a motion to reduce the sentence and/or a notice of appeal after defendant requested that counsel do so. Defendant's petition and attached affidavit indicated that plea counsel responded to defendant by saying "it would be a waste of time and money to [file a] motion for reduction of sentence and appeal." Defendant alleged that the deprivation of his right to appeal prejudiced him.

¶ 21    On August 2, 2013, the circuit court summarily dismissed defendant's postconviction petition at the first stage. On appeal, the Fourth District reversed and remanded the matter, finding that defendant presented the "gist" of a claim of ineffective assistance of counsel. See *People v. Wills*, 2015 IL App (4th) 130730-U, ¶ 42.

_____

[2]We note that the plea proceedings took place under the jurisdiction of the Fourth District. After the Fourth District issued several decisions on appeal, Champaign County was redistricted from the Fourth District to the Fifth District. Ill. S. Ct., M.R. 30858 (eff. Dec. 8, 2021).

¶ 22　In July 2015, defendant's appointed postconviction counsel filed an amended postconviction petition. The amended petition alleged that plea counsel provided ineffective assistance by disregarding defendant's request to file a postplea motion, that the circuit court failed to provide adequate postplea admonishments pursuant to Illinois Supreme Court Rule 605(c) (eff. Oct. 1, 2001), and that plea counsel essentially conceded that the 20-year sentencing cap was appropriate at the sentencing hearing. The State subsequently filed a motion to dismiss defendant's amended petition, which the court granted.

¶ 23　On appeal, the Fourth District reversed and remanded the matter because defendant "was not permitted a reasonable opportunity to respond to the motion." *People v. Wills*, 2016 IL App (4th) 150758-U, ¶ 21. The Fourth District remanded with directions to allow defendant to respond to the motion and made "no findings on the merits of either the motion to dismiss or the postconviction petition." *Id.*

¶ 24　On March 10, 2017, defendant's newly appointed postconviction counsel filed an answer to the State's motion to dismiss the amended postconviction petition. Counsel alleged that the claims raised in defendant's previously filed petition showed a substantial violation of his constitutional rights. Counsel added that the plea agreement was involuntary because defendant did not know the consequences of entering into the plea agreement and that defendant "believed that he could file a motion to reduce [his] sentence even though there was a sentencing cap." Counsel asserted that plea counsel was ineffective for failing to advise defendant that the sentencing cap would require him to file a motion to withdraw his guilty plea as opposed to a motion to reduce his sentence. Counsel requested that the circuit court deny the State's motion and hold an evidentiary hearing.

¶ 25    On May 12, 2017, the circuit court granted the State's motion to dismiss the amended postconviction petition. The court found that the admonishments at the sentencing hearing substantially complied with Rule 605(c), defendant was admonished of the requirement that he file a motion to withdraw his guilty plea to preserve his right to appeal, trial counsel was not ineffective where he successfully negotiated a sentencing cap, and defendant's argument that he would have received a lower sentence had trial counsel argued more zealously was a mere conclusion. The court also found disingenuous defendant's claim that his guilty plea was involuntary.

¶ 26    On appeal, the Fourth District reversed and remanded the cause for further proceedings based on postconviction counsel's failure to comply with the requirements of Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013).[3] *People v. Wills*, 2018 IL App (4th) 170385-U, ¶¶ 21, 22. Accordingly, the Fourth District did not reach defendant's other contentions on appeal. *Id.* ¶ 22.

¶ 27    On November 8, 2018, newly appointed postconviction counsel filed a second amended postconviction petition. Counsel alleged that defendant's plea was involuntary and unknowing where defendant agreed to plead guilty because he understood there would be a sentencing hearing where plea counsel would argue for the minimum sentence. Counsel asserted that plea counsel did no investigation prior to the sentencing hearing. Counsel further asserted that plea counsel presented no mitigation evidence and suggested no mitigation was available at the sentencing hearing. Counsel argued that for these reasons defendant did not receive the benefit of the bargain and he was denied his right to a fair sentencing hearing.

---

[3]On appeal, defendant argued that "(1) the trial court erred by dismissing his amended postconviction petition because he made a substantial showing that plea counsel provided ineffective assistance and/or that his plea was involuntary; and (2) postconviction counsel's representation was ineffective because he failed to comply with Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) where postconviction counsel did not review the record, and neither cited the record nor the proper legal standard in his answer to the State's motion to dismiss the amended postconviction petition." *People v. Wills*, 2018 IL App (4th) 170385-U, ¶ 2.

¶ 28    In addition, postconviction counsel asserted that plea counsel was ineffective for failing to file an appeal or consult with defendant regarding an appeal. Counsel alleged that defendant expressed a desire to challenge his sentence, but he did not comprehend the admonitions at his sentencing hearing and trusted that plea counsel would file the appropriate motions. Counsel asserted that plea counsel failed to discuss the evidence or trial strategy with defendant and failed to clarify the sentencing range. Counsel further asserted that plea counsel failed to adequately communicate with defendant.

¶ 29    Postconviction counsel attached several affidavits in support of the amended petition. Defendant attested in an affidavit that he expressed a desire to withdraw his guilty plea and that plea counsel did not properly communicate with or advise him after he expressed a desire to file a motion to reduce his sentence. Defendant's mother, Knichola Stone, and grandmother, Gloria Stone, attested in affidavits that they would have testified or written letters in support of defendant for sentencing, but they were not asked to do so by plea counsel. Defendant also attached affidavits from his high school teacher, Charles Weinberg, and a juvenile detention officer, Lucas Gualt, in which they attested that defendant was a good person.

¶ 30    The State filed a motion to dismiss the amended petition, alleging that defendant's plea was knowing and voluntary because he had been properly admonished and understood the terms of the plea. The State asserted that plea counsel presented the AA attendance sheet and a character letter at sentencing, while emphasizing three points of mitigation. The State noted that much of the mitigation evidence was contained in the PSI or was brought out in defendant's statement in allocution. Lastly, the State asserted that defendant failed to show how plea counsel's ineffective assistance led defendant to accept the plea offer or that he would not have pleaded guilty but for plea counsel's deficient performance.

¶ 31    Postconviction counsel filed a motion in response to the State's motion to dismiss. Counsel repeated the same arguments that were contained in the petition and stressed that plea counsel was required to consult with defendant regarding a possible appeal.

¶ 32    On September 5, 2019, the circuit court held a third-stage evidentiary hearing. Postconviction counsel clarified that procedurally, if defendant was successful in showing a constitutional violation, defendant would be allowed to file a motion to withdraw his guilty plea. Postconviction counsel explained that defendant was not asking, at that time, for his guilty plea to be withdrawn.

¶ 33    Defendant testified that his family hired plea counsel, James Dedman, to represent him in March 2012. Plea counsel reviewed the case and discovery materials with defendant "a little bit." Defendant had difficulty communicating with plea counsel due to his incarceration. Plea counsel informed defendant of a plea offer of 17 years to be served at 85%, which defendant rejected. Plea counsel also informed defendant of a plea offer for a sentencing range capped at 20 years, which defendant accepted. Defendant understood that plea counsel would advocate for him to get the minimum six years at the sentencing hearing. Plea counsel did not advise defendant that he could present witnesses and evidence at the sentencing hearing. Defendant would have given plea counsel the names of family members and others who would have testified on his behalf.

¶ 34    Defendant testified that he advised plea counsel of his desire to file an appeal and a motion to reduce his sentence. Plea counsel told defendant that "it would have been a waste of time and money." Plea counsel did not tell defendant it would have been procedurally improper or that he would have had to file a motion to withdraw his guilty plea. When asked about the circuit court's admonishments regarding his right to appeal and the necessity of filing a motion to withdraw his guilty plea, defendant explained that he was upset and surprised after the court sentenced him to

12

20 years. Defendant specifically told plea counsel that he wanted to appeal the case. Defendant did not speak to plea counsel after sentencing. Defendant later contacted the county clerk regarding the progress of his appeal. Defendant attempted to appeal for the last seven years.

¶ 35  On cross-examination, defendant acknowledged he and plea counsel discussed the evidence, including the fact that there were statements against him. Defendant indicated that he did not want to spend 17 years in prison and wanted closer to the minimum. Defendant never listened to or reviewed his confession with plea counsel. Plea counsel attempted to show defendant "something" on his computer once, but the computer would not work. Defendant denied that he discussed trial strategy with plea counsel. Defendant did not worry about the victim making the trip from Australia to testify against him.

¶ 36  On redirect, defendant testified that he learned he could call witnesses at the sentencing hearing after he spoke with another attorney. Plea counsel never informed defendant that he could call witnesses at the sentencing hearing or provide proof regarding his difficult childhood. Defendant also understood that the plea meant the robbery charge would be dismissed and the robbery would "run together" with the kidnapping sentence.

¶ 37  Weinberg testified at the hearing. Weinberg had a good relationship with defendant and was surprised to learn he had been charged with this crime. Weinberg knew defendant to be impulsive, but not in a violent way. Weinberg believed that younger individuals were more susceptible to peer pressure.

¶ 38  Knichola Stone and Gloria Stone both testified at the hearing. Both women testified that defendant was helpful to the family. Both women were present for every hearing, including sentencing, but were never asked to be a witness or provide letters in support of defendant. Both women were willing to testify or write a letter in support of defendant. Knichola testified that

13

defendant had earned his GED and was an artist drawing for a tattoo artist at the time of the offense. Knichola did not like all of defendant's friends and claimed that defendant was a "follower" with his group of friends. Gloria testified that defendant got in trouble when he was with his friends but not when he was by himself.

¶ 39    The State called plea counsel, James Dedman, to testify at the hearing. Plea counsel confirmed that he was retained by defendant's mother in March 2012. Plea counsel reviewed the police reports and discovery with defendant on multiple occasions. Plea counsel opined that if the victim "came back from Australia, it would be a very bad day for [defendant]." Plea counsel noted there was a lot of evidence against defendant, including his own confession. When asked if he gave defendant an opinion about the plea offers tendered by the State, plea counsel responded, "I'm sure I did. I don't remember what they were now." Plea counsel could not recall if he told defendant that the 20-year cap was a good deal.

¶ 40    Plea counsel testified that his trial strategy was largely based on his belief that the victim would not travel back to the United States for trial. Plea counsel discussed this strategy with defendant. Defendant asked plea counsel questions and counsel answered the questions to the best of his ability. Plea counsel and defendant also discussed defendant's confession. When asked if the confession motivated defendant's decision to plead guilty, plea counsel responded, "Yes, I think that's when he decided he should plead guilty." Plea counsel recalled that he brought his computer to the jail to play defendant's confession. Plea counsel could not recall if there was a problem with the computer but claimed that he spent time reviewing the confession with defendant. Defendant decided to plead guilty after reviewing the confession.

¶ 41    Plea counsel testified that he advised defendant "that the [PSI] was the most important thing" after the plea. Plea counsel directed defendant to fully cooperate with the Court Services

14

Department. Plea counsel believed that the sentencing judge would put the most weight into the PSI report. Plea counsel acknowledged that he did not look for witnesses but claimed he advised defendant to get "some letters" because the sentencing judge preferred letters. Plea counsel claimed that he was very familiar with the sentencing judge, which led him to believe that the PSI report and letters would be the most important evidence. Plea counsel denied telling defendant that he could not call witnesses or present evidence at the hearing. Plea counsel believed that the PSI report adequately outlined defendant's life. Plea counsel also advised defendant in advance that he could make a statement in allocution at the hearing. Plea counsel made a short argument at the hearing because the sentencing judge preferred short arguments.

¶ 42 Plea counsel testified that he was seated next to defendant after the sentencing judge sentenced defendant to 20 years. Plea counsel did not recall a specific conversation with defendant after sentencing. When asked if defendant told plea counsel that he wanted plea counsel to file a motion to reduce the sentence, plea counsel responded, "I would have talked to him about it. I believe—the correct motion would have been a motion to withdraw his guilty plea, and I would have certainly explored with him what grounds he thought he had to do that." Plea counsel did not recall defendant requesting that plea counsel file such motion and defendant never sent plea counsel a letter asking counsel to file such motion.

¶ 43 On cross-examination, plea counsel reiterated his belief that the PSI report was the most important evidence at the sentencing hearing. Plea counsel opined that the PSI report was more important than presenting testimony from family and friends, explaining that the "court [was] more likely to believe what's in the [PSI] report than a letter or a communication from friends or family." Plea counsel spoke with defendant's family members prior to sentencing but did not recall requesting any family member to write a letter on defendant's behalf.

15

¶ 44    The circuit court then asked if plea counsel remembered defendant making a request to file an appeal, and plea counsel responded, "I would say it's—it—it tends to be that it did not happen, as opposed—because I had—I would have done something if I had heard that." Plea counsel stated, "If, as I'm saying, if he'd said something like that, I would have done something. Since I didn't do anything, my conclusion is that he didn't say it."

¶ 45    Following plea counsel's testimony, postconviction counsel argued that plea counsel was ineffective for failing to consult with defendant regarding an appeal after defendant requested to file an appeal and for failing to advocate for defendant at the sentencing hearing. Postconviction counsel stated that there was "beautiful mitigation evidence," including evidence showing that defendant was a 17-year-old who grew up without a strong male influence and was "crying out for a strong male role model." Postconviction counsel also noted the evidence showing that defendant had a loving, supportive family, but that he suffered from substance abuse and peer pressure at the time of the offense. Postconviction counsel discounted plea counsel's reference to the mitigating evidence as "grasping at straws." Postconviction counsel concluded with the following statements:

> "[Plea counsel] didn't just walk into that hearing and throw [defendant] under the bus. He backed it up over him to make sure he was dead. I get it. It can be hard to stand next to someone that everybody else in the courtroom thinks is a bad person, but if you['re] a defense attorney and you can't do that, get a different job."

¶ 46    The State argued that defendant was properly admonished and that defendant merely had buyer's remorse. The State asserted that all the necessary information was contained in the PSI report. The State further asserted that defendant failed to show that he was prejudiced and would have gone to trial instead of pleading guilty.

16

¶ 47    On August 29, 2022,[4] the circuit court issued a written order denying defendant's postconviction petition. Regarding defendant's claim that his plea was involuntary and unknowing, the court found that plea counsel presented a short argument that pointed out three mitigating factors. The court also found that plea counsel presented a letter. The court further found that the detailed PSI report provided essentially the same information that the witnesses would have provided. The court found that plea counsel acted reasonably because he believed the short argument and letters were preferred by the sentencing judge. The court concluded that defendant's claim did not "demonstrate an involuntary and unknowing plea so much as disappointment with counsel's efforts at and even more so with the result of the sentencing hearing." The court further found that defendant's claim that he did not fully understand the sentencing range was contradicted by the record.

¶ 48    Regarding defendant's claim that plea counsel failed to fully explain the evidence and discuss trial strategy, the circuit court noted that both defendant and plea counsel testified at the hearing that they discussed the evidence, including defendant's confession. The court found that defendant decided to plead guilty after he discussed the confession with plea counsel. Noting that defendant did not claim that plea counsel advised him to plead guilty, the court found his claim that he would not have pled guilty had he known he could not seek reconsideration of his sentence or file an appeal lacked credibility. The court found that defendant received the benefit of his bargain, where there was a complete confession and no doubt of his guilt. The court found that defendant pled guilty to eliminate the risk of a possible 30-year sentence and that his acceptance

---

[4]It appears from the record that the delay in rendering a decision resulted, in part, from the COVID-19 pandemic.

17

of the 20-year sentencing cap instead of the 17-year offer was to take the chance to get a lower sentence.

¶ 49    Regarding defendant's claim of ineffective assistance at sentencing, the circuit court found it was reasonable trial strategy for plea counsel to keep arguments short and concise. The court found that counsel did make an argument in mitigation and that the sentencing judge did find that defendant had rehabilitative potential. Accordingly, the court found that plea counsel's actions at sentencing were not the result of unsound strategy and there was no prejudice.

¶ 50    Regarding plea counsel's failure to consult with defendant regarding an appeal, the circuit court found it "undisputed that counsel did not consult with [defendant] nor file any pleadings to preserve [defendant's] right to seek to withdraw his plea or appeal." The court noted that there was some dispute as to whether defendant made such request but found that defendant "did in fact request a motion to reduce sentence or appeal." The court noted that "[t]he appellate court in *Wills I* held that the timing of that request essentially means that counsel was requested to file a Motion to Withdraw Guilty Plea, or that he was required to file an appropriate pleading to preserve that right." The court, relying on *People v. Edwards*, 197 Ill. 2d 239 (2001), concluded that defendant was required to make a substantial showing that he could prevail on a motion to withdraw his guilty plea. However, the court found that defendant's claim that he would not have entered into the plea agreement if he had known he could not seek reconsideration of his sentence was not credible. The court also found that plea counsel's decisions at sentencing were not the result of unsound trial strategy, and that defendant was not prejudiced by counsel's performance.

¶ 51    Regarding defendant's claim that plea counsel failed to adequately communicate with him, the circuit court found it was reasonable to negotiate a plea agreement where defendant gave a confession. The court found that the transcript showed defendant was admonished. The court again

18

found defendant's claim that he would not have agreed to the plea agreement if he had known he could not appeal lacked credibility. For these reasons, the court denied defendant's postconviction petition.

¶ 52    Defendant filed a timely notice of appeal.

¶ 53                                II. Analysis

¶ 54    On appeal, defendant argues that the circuit court erred by denying his petition at the third stage of the proceedings, where the evidence established that plea counsel provided ineffective assistance. Specifically, defendant maintains the evidence established that plea counsel failed to consult with him after he requested to file an appeal and that he had nonfrivolous grounds to file a motion to withdraw his guilty plea because he was denied effective assistance of counsel at the postplea sentencing hearing. The State contends that the court properly denied the petition. We agree with the State.

¶ 55    The Post-Conviction Hearing Act (Act) provides defendants with a procedural mechanism to raise claims of violations of their constitutional rights. *People v. Robinson*, 2020 IL 123849, ¶ 42. "The Act sets forth three stages of review." *People v. Domagala*, 2013 IL 113688, ¶ 32. At the first stage, "the circuit court may dismiss postconviction petitions that are 'frivolous or *** patently without merit.' " *Id.* (quoting 725 ILCS 5/122-2.1(a)(2) (West 2010)). If the petition advances to the second stage, "counsel may be appointed to an indigent defendant and the State may file a motion to dismiss or an answer to the petition." *Id.* ¶ 33 (citing 725 ILCS 5/122-4, 122-5 (West 2010)). At the second stage, "the circuit court must determine whether the petition and any accompanying documentation make a 'substantial showing of a constitutional violation.' " *Id.* (quoting *Edwards*, 197 Ill. 2d at 246). "If the petitioner makes the requisite substantial showing that his constitutional rights were violated, he is entitled to a third stage evidentiary hearing." *Id.*

19

¶ 34 (citing *Edwards*, 197 Ill. 2d at 246). At both the second and the third stages, "the defendant bears the burden of making a substantial showing of a constitutional violation." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). At a third-stage hearing, "the circuit court serves as the fact finder, and, therefore, it is the court's function to determine witness credibility, decide the weight to be given testimony and evidence, and resolve any evidentiary conflicts." *Domagala*, 2013 IL 113688, ¶ 34 (citing *People v. English*, 2013 IL 112890, ¶ 23). "At this stage, the circuit court must determine whether the evidence introduced demonstrates that the petitioner is, in fact, entitled to relief." *Id.* "When a petition is advanced to a third-stage, evidentiary hearing, where fact-finding and credibility determinations are involved, we will not reverse a circuit court's decision unless it is manifestly erroneous." *Pendleton*, 223 Ill. 2d at 473. A "manifest error" is an error that "is clearly evident, plain, and indisputable." *People v. Ruiz*, 177 Ill. 2d 368, 384-85 (1997).

¶ 56   This court analyzes claims of ineffective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Evans*, 186 Ill. 2d 83, 93 (1999). To establish a claim of ineffective assistance under *Strickland*, a defendant must prove (1) that counsel's performance was deficient and (2) that counsel's deficient performance resulted in prejudice to the defendant. *Id.* A defendant satisfies the deficiency prong by demonstrating that counsel made errors that were so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" as guaranteed by the sixth amendment (U.S. Const., amend. VI). *Id.* Defendant must overcome the strong presumption that the challenged action or inaction was the product of sound trial strategy. *Id.* A defendant satisfies the prejudice prong by demonstrating that a reasonable probability exists that, but for counsel's deficient performance, the result of the proceedings would have been different. *Id.* "This court may dispose of a claim on prejudice

20

grounds alone, without deciding whether counsel's performance was deficient." *People v. Beasley*, 2017 IL App (4th) 150291, ¶ 26 (citing *People v. Munson*, 171 Ill. 2d 158, 184 (1996)).

¶ 57    We initially note that the circuit court found that plea counsel failed to consult with defendant or file an appeal after defendant requested that plea counsel do so. In other words, the court found that plea counsel's performance in this regard was deficient. See *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (reiterating the long-standing holding "that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable").

¶ 58    Defendant, relying on *Flores-Ortega*, argues that prejudice is presumed, where plea counsel's "deficiency deprived [defendant] of the appellate proceeding altogether." *Id.* at 483. We note that, unlike *Flores-Ortega*, the present case involves a guilty plea and, thus, the question is whether defendant was prejudiced by plea counsel's failure to move to withdraw defendant's guilty plea after defendant expressed a desire to file a motion to reconsider his sentence or an appeal. Our supreme court addressed a similar situation in *Edwards*, 197 Ill. 2d 239.

¶ 59    In *Edwards*, our supreme court held that prejudice is presumed at the first stage of postconviction proceedings, where a defendant alleges counsel failed to perfect an appeal by first filing a motion to withdraw a guilty plea. *Id.* at 257. Our supreme court limited this holding to the first stage of postconviction proceedings. *Id.* In doing so, our supreme court noted:

"To merit an evidentiary hearing on his claim that he told his trial counsel to file a motion to withdraw his guilty plea and that counsel was constitutionally ineffective for failing to do so, defendant will have to make a substantial showing to that effect. [Citation.] Such a showing will necessarily entail some explanation of the grounds that could have been presented in the motion to withdraw the plea. Since defendant will be at the second stage

21

of the post-conviction proceedings and will be represented by an attorney, rather than proceeding *pro se*, this will not present an unreasonable burden." *Id.* at 257-58.

¶ 60    As defendant recognizes, some Illinois courts have interpreted *Edwards* as requiring a defendant at the second and third stages of postconviction proceedings to establish prejudice by alleging in the postconviction petition the "grounds that could have been presented in a motion to withdraw the guilty plea" and by showing "a reasonable probability the motion would be granted on those grounds." *Beasley*, 2017 IL App (4th) 150291, ¶ 30 (citing *People v. Gomez*, 409 Ill. App. 3d 335, 340 (2011)); *People v. Cuevas*, 2018 IL App (2d) 151100, ¶ 32 (reaffirming *Gomez* and finding that "[t]he determination of prejudice is more than an outcome-determinative test"); *People v. Hughes*, 329 Ill. App. 3d 322, 326 (2002) (holding that at the third stage of postconviction proceedings the "defendant was required to present evidence of the grounds that could have been raised in the motion to reconsider to establish ineffective assistance of counsel").

¶ 61    The defendant in *Gomez* similarly argued that prejudice must be presumed where his trial counsel failed to file a motion to withdraw the guilty plea after the defendant requested that counsel do so. *Gomez*, 409 Ill. App. 3d at 339. The Second District rejected the defendant's argument, reasoning as follows:

"Because defendant's petition survived summary dismissal, he had to establish at stage two, pursuant to *Edwards*, on what justifiable basis he could have moved to withdraw his guilty plea and that there was a reasonable probability that the motion would have been granted allowing defendant to withdraw his plea of guilty." *Id.* at 340.

¶ 62    We find *Gomez* and *Beasley* well-reasoned and, thus, follow those cases here. Accordingly, we conclude that, to establish prejudice at the third stage of postconviction proceedings, the defendant must allege in the postconviction petition the justifiable grounds that could have been

22

presented in the motion to withdraw the guilty plea and then present evidence showing a reasonable probability the motion would be granted on such grounds.

¶ 63    Although defendant maintains prejudice should have been presumed, defendant also maintains that the evidence presented at the hearing established prejudice. Specifically, defendant asserts that he could have withdrawn his guilty plea where plea counsel failed to advocate for him at the sentencing hearing. Defendant maintains that plea counsel essentially conceded that a 20-year sentence was appropriate, rather than presenting mitigation evidence in support of a lesser sentence.

¶ 64    "Again, under *Strickland*, a defendant must show (1) counsel's performance was objectively unreasonable and (2) the deficient performance resulted in prejudice." *Beasley*, 2017 IL App (4th) 150291, ¶ 32. "The defendant must show that counsel's performance fell below minimal professional standards and that but for counsel's incompetence there is a reasonable probability that the resulting sentence would have been different." *People v. Howery*, 178 Ill. 2d 1, 55 (1997) (citing *People v. Orange*, 168 Ill. 2d 138, 171 (1995); *People v. Perez*, 148 Ill. 2d 168, 186 (1992); *People v. Franklin*, 135 Ill. 2d 78, 116-17 (1990)). "Counsel has a duty to investigate potential sources of mitigating evidence or must have a reason for not making such an investigation"; however, "[t]he failure to offer mitigation evidence does not in and of itself establish deficient performance." *Id.* "Defense counsel's decision not to present mitigating evidence will not be deemed incompetent if it stems from a theory of defense which does not require its use." *Id.*

¶ 65    As an initial matter, we agree with defendant's assertion that plea counsel's performance at the sentencing hearing was deficient, where plea counsel stated, "It doesn't take much evidence or argument to get to the 20 years in this case." Plea counsel then stated, "The victim impact

23

statement was one of the most horrendous things I have ever read." After briefly reviewing three mitigating factors, counsel concluded by stating, "So, I mean, if we are grasping at straws, I want you to have them all." While plea counsel testified that he was familiar with the sentencing judge and that he believed the sentencing judge preferred short arguments, we cannot agree that counsel's argument constituted reasonable trial strategy. In our view, defendant demonstrated that counsel's performance fell below the objective standard of reasonableness and the circuit court's finding to the contrary was against the manifest weight of the evidence.

¶ 66    Despite this, defendant failed to present evidence showing that, but for counsel's deficient performance, the resulting sentence would have been different. The record reveals that the circuit court considered defendant's age and found that he had rehabilitative potential. The court also considered the fact that defendant confessed his involvement to police and pled guilty to the crime. Moreover, the court considered defendant's statement in allocution, finding that defendant was an "intelligent" man. However, the court concluded that those mitigating factors were considered by the State when it agreed to recommend a sentencing cap of 20 years—10 years less than the maximum sentence for aggravated kidnapping. It also appears from the record that the sentencing judge relied heavily on the PSI report and victim impact statement in imposing defendant's 20-year sentence.

¶ 67    While defendant complains that plea counsel failed to present additional mitigating evidence at sentencing,[5] we note that much of the evidence defendant sought to introduce at sentencing would have established facts contained in the PSI report. The PSI report included a lengthy, and detailed, account of defendant's criminal history, family background, and substance

[5]Defendant argues for the first time on appeal that plea counsel could have raised an argument based on *Miller v. Alabama*, 567 U.S. 460 (2012). Because defendant did not raise this issue in his amended petition, the issue is forfeited. *Pendleton*, 223 Ill. 2d at 475.

24

abuse. The PSI report indicated that defendant had a history of juvenile adjudications for battery offenses and that he had a good relationship with his family. The PSI also indicated that defendant began substance abuse treatment in jail, and plea counsel presented a document showing defendant's attendance at treatment. Plea counsel testified that, based on his experience with the sentencing judge, the PSI report would be the most important evidence. The record appears to confirm plea counsel's testimony in this regard.

¶ 68    Moreover, the victim impact statement outlined the horrendous nature of the kidnapping and the impact it had on the victim. The victim recounted the individuals beating him for hours and laughing when the victim pleaded for them to stop. After the victim lost consciousness, the individuals stripped him of his clothing and belongings before dumping him in a ditch with serious injuries. The victim outlined the extensive injuries and serious, and likely long-term, psychological issues he sustained as a result of the attack. The circuit court, relying on the heinous nature of the crime, noted that a harsh sentence was necessary to deter others from committing similar crimes. In our view, the evidence failed to demonstrate that defendant would have received a lesser sentence had counsel presented a more zealous argument or additional evidence in mitigation.

¶ 69    Therefore, we conclude that defendant failed to show that, but for counsel's deficient performance, the resulting sentence would have been different. Accordingly, we cannot say that the circuit court's determination that defendant suffered no prejudice as a result of plea counsel's performance at sentencing was against the manifest weight of the evidence. Consequently, defendant failed to show there was a reasonable probability that the motion to withdraw his guilty plea would be granted.

¶ 70                                III. Conclusion

¶ 71    For the foregoing reasons, we affirm the order of the Champaign County circuit court.

25

¶ 72    Affirmed.